Misty Dawn **BOYER**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A04–0706–CR–349.

Court of Appeals of Indiana.

March 24, 2008.

John Andrew Goodridge, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jessica A. Meek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Following a bench trial, a magistrate found Misty Boyer guilty of domestic battery, a Class A misdemeanor. On appeal, Boyer raises the sole issue of whether there was sufficient evidence to disprove her claim of self-defense. We affirm, concluding there was sufficient evidence for the magistrate to find beyond a reasonable doubt that the State disproved Boyer's self-defense claim. We also address sua sponte whether the magistrate who presided over Boyer's trial had statutory authority to enter Boyer's judgment of conviction.

### Facts and Procedural History

On December 3, 2006, after consuming four beers in one hour, Boyer, along with her friend, Deona Cobb, and Boyer's daughter, four-year-old A.B., visited the home of Joshua Bradburn, A.B.'s father. After requesting Boyer to leave "five or six times," Bradburn reiterated his request in an impolite manner. Transcript at 18. When Boyer explained she would not leave until Bradburn asked politely, Bradburn grabbed Boyer and attempted to walk her out the door.[1] As they approached the

---

1. The door toward which Bradburn was walking Boyer was not the entrance to the living area of Bradburn's home, but the entrance to a common, foyer-type area Bradburn shared

door, Boyer "started goin' ballistic" by ripping Bradburn's shirt, scratching his arms and face, flailing her arms and legs, and attempting to spray Bradburn with a can of mace that was attached to her keychain. *Id.* at 26. Bradburn wrestled Boyer out the door and onto his front porch. When they reached the front porch, Bradburn pinned Boyer to the ground by placing his knee on her back in an attempt to restrain her. Bradburn then told his brother, who was inside Bradburn's home, to contact the police.

Crystal Spann, Bradburn's neighbor, also was inside Bradburn's home during the altercation. When Spann observed Bradburn on top of Boyer, she pulled Bradburn off, positioned herself between them, and told Boyer to leave. When Boyer stood up, she reached around Spann and struck Bradburn in the face. In response, Spann pushed Boyer away from Bradburn. Boyer backpedaled from Spann's push and fell down the front porch stairs.

The State charged Boyer with domestic battery, a Class A misdemeanor. After hearing testimony from Bradburn, Spann, two responding officers, Cobb, and Boyer, the magistrate found Boyer guilty. Based on this finding, the magistrate sentenced Boyer to 180 days, but also ordered Boyer's entire sentence suspended if she successfully completed a domestic abuse intervention program.

We initially remanded Boyer's appeal because it did not appear from the record that "the magistrate's finding received judicial approval in the form of a judgment of conviction" as required by Indiana Code section 35–38–1–1(a) and Indiana Criminal Rule 15.1. *Boyer v. State,* 881 N.E.2d 97, No. 82A04–0706–CR–349, slip op. at 2 (Ind.Ct.App., Feb. 11, 2008). The magis-

trate responded by issuing a judgment of conviction that is dated June 6, 2007, but bears a file stamp of the Vanderburgh County Superior Court Clerk dated February 21, 2008. We will assume for purposes of this opinion that Boyer now appeals from this judgment.

*Discussion and Decision*

## I. Authority of Magistrate

We initially address sua sponte whether the magistrate presiding over Boyer's trial had statutory authority to enter Boyer's judgment of conviction. We start with the requirement under Indiana Code section 35–38–1–1(a) that "after a verdict, finding, or plea of guilty, if a new trial is not granted, the court shall enter a judgment of conviction." *See also* Ind.Crim. Rule 15.1 ("Subject to the provisions set forth by statute, ... upon a decision of the court, the court shall promptly prepare and sign the judgment, and the clerk shall thereupon enter the judgment in the Record of Judgments and Orders and note the entry of the judgment in the Chronological Case Summary."). Indiana Code chapter 33–23–5 grants various powers to magistrates, but generally precludes them from entering a final appealable order. *See* Ind. Code § 33–23–5–8(2). The principal exception to this rule is Indiana Code section 33–23–5–9(b), which states that a magistrate presiding over a criminal trial may "[e]nter a final order." Notably absent from subsection 9(b) is any reference to the power of a magistrate to enter a "judgment of conviction" as required by Indiana Code section 35–38–1–1(a). Thus, the question becomes whether our legislature, in granting a magistrate presiding over a criminal trial the power to enter a "final order" under subsection 9(b), intended to grant such magistrate the power to enter a

with his sister, who lived in a separate residence on the second level.

"judgment of conviction" as required by Indiana Code section 35–38–1–1(a).

Our supreme court recently reiterated the rules of statutory interpretation:

> The primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent. The best evidence of that intent is the language of the statute itself, and we strive to give the words in a statute their plain and ordinary meaning. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.

*State v. Oddi–Smith,* 878 N.E.2d 1245, 1248 (Ind.2008) (citations omitted).

Subsection 9(b) does not explicitly state that a magistrate presiding over a criminal trial has the power to enter a judgment of conviction. Moreover, the Indiana Code contains numerous provisions that reference both "judgment" and "order," which suggests that, as far as the legislature is concerned, these terms encompass distinct judicial powers. *See, e.g.,* Ind.Code § 33–28–1–5 (stating that a circuit court's powers include the power to "[m]ake all proper judgments [and] ... orders"); *cf.* Ind. Trial Rule 60(B) (stating that under certain circumstances the trial court may relieve a party from a "final order" or "final judgment"). The most notable example in the context of a magistrate's authority is Indiana Code 33–33–2–14(g), which, in addition to granting Allen County magistrates the powers listed in Indiana Code chapter 33–23–5, also grants such magistrates "the power to enter a final order or judgment" in small claims proceedings and proceedings involving protective orders. These provisions suggest that by describing a magistrate's authority under Indiana Code section 33–23–5–9(b) as the power to enter a "final order" only, the legislature intended to preclude the power to enter a judgment of conviction.

■ Nevertheless, comparison of Indiana Code section 33–23–5–9(b) to its predecessor convinces us that the legislature did not intend to limit a magistrate presiding over a criminal trial from entering a judgment of conviction. The predecessor to subsection 9(b) stated in pertinent part: "A magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. *The court shall enter the final order.*" Ind.Code § 33–4–7–8 (Supp.1989) (emphasis added). The "final order" mentioned in this section presumably is synonymous with the requirement in Indiana Code section 35–38–1–1(a) that the trial court enter a "judgment of conviction" because both sections refer to the action a trial court must take after a finding of guilty has been made. In 1993, the legislature amended Indiana Code section 33–4–7–8 (Supp.1989) to its current form. *See Dearman v. State,* 632 N.E.2d 1156, 1158 n. 2 (Ind.Ct.App.1994), *trans. denied.* The significance of the amendment was that it no longer prevented a magistrate presiding over a criminal trial from entering a final order; instead, the amended statute explicitly extended this power to such a magistrate. Thus, to the extent there are differences between a final order and a judgment of conviction, we do not think that in amending former Indiana Code section 33–4–7–8 the legislature's reference to the power of a magistrate to enter the former was intended to exclude the power of a magistrate to enter the latter. Accordingly, we conclude that in enacting Indiana Code section 33–23–5–9(b), the legislature intended to give a

magistrate presiding over a criminal trial the power to enter a final order and to enter a judgment of conviction. If we have misinterpreted the legislature's intent with regard to its enactment of Indiana Code section 33–23–5–9(b), we urge it to correct our oversight.

We now turn to the merits of Boyer's appeal.

## II. Sufficiency of the Evidence

### A. Standard of Review[2]

 Boyer argues there was insufficient evidence for the magistrate to find beyond a reasonable doubt that the State disproved her self-defense claim. This court reviews a challenge to sufficiency of the evidence to rebut a self-defense claim under the same standard as any sufficiency of the evidence claim. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). That is, the verdict will not be disturbed if there is sufficient evidence of probative value to support the conclusion of the trier of fact. *Id.* Stated differently, a reviewing court will reverse a conviction where the defendant claimed self-defense only if no reasonable person could say the State disproved self-defense beyond a reasonable doubt. *Taylor v. State,* 710 N.E.2d 921, 924 (Ind.1999). In conducting this review, we neither reweigh evidence nor judge witness credibility. *Sanders,* 704 N.E.2d at 123.

### B. Disproof of Self–Defense

 "A person is justified in using reasonable force against another person to protect the person ... from what the person reasonably believes to be the imminent use of unlawful force." Ind.Code § 35–41–3–2(a). When the defendant has raised a self-defense claim, the State must disprove at least one of the following elements beyond a reasonable doubt: 1) the defendant was in a place where she had a right to be; 2) the defendant was without fault; and 3) the defendant had a reasonable fear or apprehension of bodily harm. *White v. State,* 699 N.E.2d 630, 635 (Ind.1998).[3] The State may disprove one of these elements by affirmatively showing the defendant did not act to defend herself or by relying on evidence elicited in its case-in-chief. *Hollowell v. State,* 707 N.E.2d 1014, 1021 (Ind.Ct.App.1999).

 Putting to the side whether Boyer was in a place where she had a right to be, Boyer argues she was without fault by characterizing her conduct as an attempt "to escape and repel [Bradburn] as he battered her," appellant's brief at 6, and characterizing Bradburn as "the initial aggressor," *id.* at 8. The State can disprove the defendant was without fault by establishing that she used more force than was reasonably necessary under the circumstances. *See* Ind.Code § 35–41–3–2(a); *Wade v. State,* 482 N.E.2d 704, 706 (Ind. 1985). In this respect, Bradburn testified he "tried to escort [Boyer] towards the door" and described his initial contact with

---

**2.** The "Statement of the Facts" section of Boyer's brief presents the facts in a manner that emphasizes Boyer's testimony and other parts of the record favorable to her case. We direct Boyer's counsel to Indiana Appellate Rule 46(A)(6)(b), which states in pertinent part that "[t]he facts shall be stated in accordance with the standard of review appropriate to the judgment," and instruct him to comply with this rule in future appeals.

**3.** Regarding the third element, the State argues it was required to disprove only that Boyer "had a reasonable fear of death or serious bodily harm." Appellee's Brief at 5 (citing *Brown v. State,* 738 N.E.2d 271, 273 (Ind.2000)). This requirement, however, applies where the defendant used deadly force, *see* Ind.Code § 35–41–3–2(a)(1) and (2); *McEwen v. State,* 695 N.E.2d 79, 90 (Ind. 1998), and Boyer's use of force did not rise to such a level.

her as a "nudging" or "shooing."[4] Tr. at 25, 26. In response, Boyer resisted by scratching Bradburn's arms and face. Bradburn testified that Boyer's scratches made him bleed, were painful, and resulted in permanent scarring. This evidence convinces us that whatever right of self-defense Boyer may have had when Bradburn touched her was extinguished because there was sufficient evidence that she used more force than was reasonably necessary under the circumstances. *See Morrison v. State*, 613 N.E.2d 865, 868 (Ind.Ct.App. 1993) (reasoning the extent and severity of the victim's injuries is relevant to determining whether the defendant used a reasonable amount of force). Thus, although the record indicates Bradburn initially touched Boyer, the magistrate could conclude beyond a reasonable doubt that Boyer was not without fault because there was sufficient evidence that she responded by using more force than was reasonably necessary under the circumstances.

There also was sufficient evidence to disprove that Boyer's fear of bodily harm was reasonable. The record indicates that after Spann pulled Bradburn off Boyer, and while Spann was between them, Boyer reached around Spann and struck Bradburn in the face. Boyer's testimony also indicates she struck Bradburn after the altercation had ceased:

Q: And is it your testimony that other than when he was pushing you and you were falling back, that you didn't scratch him at all?

A: No.

Q: Um, and you didn't do anything at all?

A: Yeah, I punched him when ... after everything was over.

Q: After it was over, you punched him?

A: Yeah. I mean after I got up ... meaning ... when I say it's over, after I got up.

. . .

Q: Okay, so the shirt got ripped when you were falling and the scratches on his arm came when you were falling and the scratches on his face came when you were falling?

A: I don't know, but ... for sure about the scratches on the face. That could've been when we were outside.

Q: Okay, but you're saying you didn't intentionally do it, right?

A: No.

Q: You didn't intentionally do anything?

A: I intentionally punched him when I got up, yes.

Tr. at 63, 66. Most cases concluding there was sufficient evidence to disprove that the defendant's fear of bodily harm was reasonable have based their conclusion in part on evidence that the victim was fleeing when the defendant used force. *See, e.g., Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002); *Hobson v. State*, 795 N.E.2d 1118, 1123 (Ind.Ct.App.2003), *trans. denied.* Nevertheless, we do not think the State is required to show the victim was fleeing to disprove that the defendant's fear of bodily harm was reasonable. Thus, although the record does not indicate Bradburn was fleeing when Boyer struck him, Spann had sufficiently interceded in the altercation such that the magistrate could find beyond a reasonable doubt that Boyer's fear of bodily harm was not reasonable when she launched her attack.

---

4. We recognize that Bradburn also described his initial contact with Boyer as a "shove" or "push." Tr. at 14, 24. Our standard of review, however, requires us to consider whether there is sufficient evidence of probative value to support the conclusion of the trier of fact. *See Sanders*, 704 N.E.2d at 123.

**164**

There was sufficient evidence for the magistrate to find beyond a reasonable doubt that the State had disproved Boyer's claims that she was without fault and that her fear of bodily harm was reasonable. Thus, it follows that the magistrate properly rejected Boyer's self-defense claim.

*Conclusion*

We conclude the magistrate had authority to enter a judgment of conviction. We also conclude there was sufficient evidence to disprove Boyer's self-defense claim. Accordingly, we affirm Boyer's conviction of domestic battery.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.