William R. MORELL, III, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 06A04–0909–CR–531.

Court of Appeals of Indiana.

Aug. 16, 2010.

Jeffrey S. Jacob, Andreoli & Jacob, Zionsville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole Dongieux Wiggins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

William Morell, III, appeals his conviction for battery by means of a deadly weapon as a class C felony.[1] Morell raises three issues, which we revise and restate as:

I. Whether the trial court abused its discretion by failing to swear the State's witnesses and failing to allow questioning related to the alleged violations of the trial court's separation order outside the presence of the jury;

II. Whether the evidence is sufficient to sustain Morell's conviction; and

III. Whether the cumulative effect of the errors committed at trial warrant reversal of the conviction.

We affirm.[2]

The facts most favorable to the conviction follow. Michelle Popp rented a home

---

1. Ind.Code § 35–42–2–1 (Supp.2007) (subsequently amended by Pub.L. No. 120–2008, § 93 (eff. July 1, 2008); Pub.L. No. 131–2009, § 73 (eff. July 1, 2009)).

2. In a footnote, Morell argues that he "would also generally assert that his defense counsel was ineffective for failing to object to the trial court's non-remedy for the alleged breach of

and lived with her two children and her roommate of over a year, James Surber. Morell rented the space in Popp's garage and had lived in Popp's house for less than two months prior to December 1, 2007. At some point, Popp discovered that Morell purchased a scorpion, a tarantula, and a snake and hid the snake under a blanket in the room of Popp's son. Under her lease, Popp was not allowed to have any pets in her home.

In the early morning hours of December 1, 2007, Surber, Popp, and Popp's boyfriend Charles Heater returned to Popp's home from a bar because Surber wanted to change his shirt and retrieve a long sleeved shirt because "it was chilly out." Transcript at 223. Popp intended to return to the bar.

When they returned to Popp's house, Morell was sitting in the living room watching television. Surber and Heater went to the garage, and Popp talked to Morell about the snake that Morell had been keeping in the house. Popp told Morell that she had a lease, wants the snake out of her home, does not like snakes, and was "scared to death of 'em." *Id.* at 160. Morell argued with Popp and told her that "it was his money," and that he could spend it "the way he wanted." *Id.* At some point, Heater came into the

house because Popp became loud and he asked if everything was okay. Popp said, "I'm over it," and that "we need to get out of here." *Id.* at 226. Morell eventually agreed to "get rid of the snake." *Id.* at 185. After ten to fifteen minutes of arguing, Popp told Morell that she wanted the snake out of her house and went outside with Heater.

Surber went to his bedroom and grabbed a shirt and did not exchange words with Morell. Surber walked through the door of the garage and pulled the door "just like [he would] normally shut it" and heard Morell say "don't shut the door on me" and utter a profanity. *Id.* at 229–230. Surber had "no clue" that Morell was close to him and had no idea whether he had hit Morell with the door. *Id.* at 230. Morell then shoved Surber from behind. Surber turned around and hit Morell on the right side of his face. Morell then tried to "wrap ... around" Surber's waist, and Surber pushed Morell to the ground and hit Morell a few more times before Heater pulled Surber back. *Id.* at 231.

Popp started yelling at Morell and Surber, stepped in between them, and told them that if they wanted to argue and fight that they needed to take the "s— in the house." *Id.* at 165. Morell "wanted to

---

the separation of witness order and further for his failure to immediately move for a mistrial or request that the witness testimony be excluded." Appellant's Brief at 6 n.1. In another footnote, Morell argues:

[I]t is clear from Defense counsel's closing argument that he was not aware that the second incident was not the basis of the charge, "Now let's look at the incident at the couch. And I don't know if, if by closing if the State conceded that or not but let's look at it anyway[."] Either way, defense counsel should have objected to and the trial court should have excluded any and all evidence related to the second incident as being irrelevant and unduly influen-

tial toward the jury's overreaching conviction.

*Id.* at 8 n. 2 (citation omitted). To the extent that Morell suggests that he received ineffective assistance of counsel or that the trial court erred in admitting evidence, Morell fails to put forth a cogent argument or cite to authority. Consequently, these issues are waived. *See, e.g., Cooper v. State*, 854 N.E.2d 831, 834 n. 1 (Ind.2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n. 3 (Ind.1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

go out to the yard and finish it," but Popp said "no not outside, let's take it inside...." *Id.* at 231. Surber went to take off his shirt and felt an "arch of pain." *Id.* Surber took his shirt about half-way up and Popp and Heater could see blood running down his side. *Id.* at 205. Surber realized that Morell had stabbed him when Morell pushed him. Everyone went inside the house.

Morell sat on the couch in the living room. Popp, a medical assistant, examined Surber in the kitchen and saw that Surber had four puncture wounds to his left side. Popp asked Surber if he wanted to go to the emergency room, and Surber told her to "go get [her] stuff." *Id.* at 170. Popp retrieved "stereostrips and two by twos and tape and things like that" and returned to the kitchen. *Id.* Surber wanted to look at his wounds and went to the bathroom. Morell was "sitting on the couch up on his ... butt ... just ready to pounce if something was to happen...." *Id.* at 208.

Surber told Morell "we can go outside and finish this, we can, you know, but I don't, I don't mess with the law, I don't mess with that kind of stuff when it's just two men, grown men fighting." *Id.* at 232–233. Morell said they could go outside and "finish it if [Surber] wanted to." *Id.* at 233. As Surber walked by, Morell jumped up, reached under his shirt and used a knife, which he wore around his neck, in a "sweeping, slashing motion" right across Surber's kneecap. *Id.* at 209. Surber then said that Morell has "got a f——— knife." *Id.* at 172. Surber then "got on top of" Morell and held Morell's wrists in his hands. *Id.*

Popp and Heater then ran into the living room. Heater put his thumb in Morell's eye, but Morell would still not let go of the knife. Heater then started "putting elbows in his solarplex." *Id.* at 210. Popp grabbed Morell's wrist and said, "Let go of the d—— knife." *Id.* at 173. After Popp, Heater, and Surber applied multiple pressure points, Morell finally released the knife. Heater held Morell until Surber and Popp were in the kitchen. Popp saw that Surber was bleeding profusely from a new wound on his left leg and called 911.

On December 3, 2007, the State charged Morell with battery by means of a deadly weapon which alleged that Morell stabbed Surber in the side with a knife numerous times. At the beginning of the jury trial, Morell moved for a separation of witnesses, which the trial court granted. After Popp testified and after a recess for lunch, Morell's attorney indicated that Morell informed him that he saw the three witnesses for the State eating lunch together and that Heater was talking on his cell phone about the case outside the courtroom. Morell's attorney also indicated that the prosecutor talked with the witnesses and they stated that they had not discussed the case. The trial court stated that Morell's attorney could cross examine Heater regarding the phone call and that "it'll go to the weight of ... his testimony." *Id.* at 196. The trial court also stated: "I don't know if Mr. Morell is going to testify or not. Perhaps he'll testify as to what he heard. The jury can sort it all out." *Id.* at 196–197. Morell's attorney stated, "Okay." *Id.* at 197. The trial court then stated: "It doesn't seem like there's been a violation of a separation order though. So, so are you asking for any relief at this time [Morell's attorney]?" *Id.* Morell's attorney stated: "No Your Honor, we just wanted to put that, put that on the record." *Id.* On cross examination, Heater testified that he went to lunch with Popp and Surber but did not talk about the case at all.

According to Morell's testimony at trial, Morell came home that evening, changed

into his pajamas, and was watching cartoons when Popp, Surber, and Heater arrived. Morell told Popp that "her friendship was worth way more to [him] than that snake was" and that he "could always buy another snake but you can't buy another friend." *Id.* at 246. Morell was going to euthanize the snake by cutting off its head, which was more humane than just letting the snake freeze to death. Surber came in and started saying that he was going to kill the snake, and Morell said: "If, if anybody gets rid of the snake it'll be me." *Id.* at 247. Morell was carrying the snake and a utility knife and walking behind Surber. Surber walked through the door and slammed the door in Morell's face. Morell then said, "Jim I know you're upset about the snake but you don't have to slam the door in my face." *Id.* at 249. "In a split second all of a sudden [Surber] had [Morell] under his left hand in a headlock and was punching [him] in the face from underneath." *Id.* Morell reached around and "just cut him one time" with a single stroke. *Id.* at 250. Morell threw the snake down on the grass beside the driveway.

Morell also testified that he went back in the house and thought "what on earth just happened." *Id.* at 251. Surber went into the bathroom and came back out and said that he was going to "kick [Morell's] ass." *Id.* at 252. Morell testified that Surber ripped off his shirt, wadded it up, came toward the couch, threw his shirt over Morell's face, pushed Morell down on the couch, and hit Morell. According to Morell, Heater kicked Morell in the kidney with his steel-toed work boots. After being beaten "for a good two minutes," Morell reached under his shirt, took a knife that he wears around his neck out of its sheath, reached around, and stuck Surber in the leg. *Id.* at 255. Morell also testified that he never made any threatening moves toward Surber.

The jury found Morell guilty as charged. The trial court sentenced Morell to six years in the Department of Correction with three years executed and three years suspended.

## I.

The first issue is whether the trial court abused its discretion by failing to swear the State's witnesses and allow questioning related to the alleged violations of the trial court's separation order outside the presence of the jury. Morell points to his observations that Surber, Popp, and Heater ate lunch together and that Heater was discussing the case on the phone outside the courtroom. Morell argues that the trial court should have called each witness into the courtroom, placed them under oath, and questioned them about the possibility of a violation. Morell also argues that "[t]he authorization by the trial court for [Morell] to address the matter on cross-exam, isn't really a remedy as this was a right [Morell] had regardless of the trial court's offer to do so," and that "[i]n effect, the court's non-remedy forced [Morell], as the observing party to the violations, into a position where it was necessary for him to testify to address the issue, in contravention of his Constitutional Rights." Appellant's Brief at 7.

The primary purpose of a separation of witnesses order is to prevent witnesses from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly. *Harrington v. State,* 584 N.E.2d 558, 562 (Ind. 1992), *reh'g denied.* Where there has been a violation of a separation order, the trial court, in the absence of connivance or collusion by the party calling the witness, may permit the witness to testify. *Heck v. State,* 552 N.E.2d 446, 452 (Ind.1990). Even when confronted with a clear viola-

tion of a separation order, the trial court may choose to allow the violating witness to testify. *Jordan v. State*, 656 N.E.2d 816, 818 (Ind.1995), *reh'g denied*. The enforcement of an order for separation of witnesses is left to the trial court's sound discretion. *Flores v. State*, 485 N.E.2d 890, 894–895 (Ind.1985). We will not reverse a trial court's decision on such matter absent a showing of a clear abuse of discretion. *Jordan*, 656 N.E.2d at 818. An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

The following exchange occurred after the recess for lunch:

[Morell's Attorney]: My client reported to me that when he went out to, to lunch at Wendy's—actually he left but he saw the three witness—State's witnesses sitting out at Wendy's together. I talked to [the prosecutor]. [The prosecutor] said he admonished them not to talk about the case. We have, in fact, [the prosecutor] asked them in my presence whether they talked about the case whether at lunch or not and they indicated that they had not discussed the case. However, my client reports that while he was sitting out there waiting for court to resume that [inaudible] one witness, the Wes Heater person, was talking on his cell phone to someone else about the case, so I don't know what—if we want to bring him in and ask him about that or?

BY THE COURT: [Prosecutor].

[Prosecutor]: I would, I would—I've told them that they're not allowed to talk about the case amongst themselves or anybody else. I don't know who Mr. Heater was on the phone with. I have know—I was just told right when we walked in the door that [Morell] alleged-

ly overheard Wes Heater on the phone talking to somebody. It had to have been someone who is not gonna testify today because all those other two people are present here, so if he was talking on the phone with somebody else I don't know if that—

BY THE COURT:—well it'll go to the weight of his, weight of his testimony. You can explore that on cross examination. I don't know if Mr. Morell is going to testify or not. Perhaps he'll testify as to what he heard. The jury can sort it all out.

[Morell's Attorney]: Okay.

BY THE COURT: It doesn't seem like there's been a violation of a separation order though. So, so are you asking for any relief at this time [ Morell's attorney]?

[Morell's Attorney]: No Your Honor, we just wanted to put that, put that on the record.

Transcript at 195–197.

At trial, Morell did not object to the trial court's resolution. Indeed, Morell indicated that he was not asking for any relief. Thus, we conclude that Morell waived this argument. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind.2004) ("[A]s a general rule, a party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court."); *Carter v. State*, 408 N.E.2d 790, 793 (Ind.Ct.App.1980) (holding that the defendant waived argument alleging a violation of the separation of witnesses order when the defendant did not object at trial).

■ Waiver notwithstanding, we conclude that Morell's argument fails. The Indiana Supreme Court has held that "where there is no affirmative evidence introduced that the witnesses had in fact discussed their testimony there is no reviewable question." *Myslinski v. State*,

257 Ind. 453, 456, 275 N.E.2d 544, 546 (1971), *reh'g denied.* Morell does not point to any affirmative evidence indicating that the witnesses had in fact discussed their testimony. Indeed, the record reveals that the witnesses denied discussing the case in front of Morell's attorney and the prosecutor, and Heater testified that he did not talk about the case at lunch. The record also does not reveal any affirmative evidence regarding who Heater was talking with on his cell phone. Moreover, the jury was informed that Heater, Surber, and Popp ate lunch together and were friends. To the extent that Morell argues that the trial court placed him in a position where it was necessary for him to testify to address the violation, we observe that Morell did not address either of the alleged violations during his testimony. Under the circumstances, we cannot say that the trial court abused its discretion or that reversible error occurred.

## II.

■ The next issue is whether the evidence is sufficient to sustain Morell's conviction. The offense of battery by means of a deadly weapon as a class C felony is governed by Ind.Code § 35–42–2–1, which provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is . . . a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon. . . . " The charging information stated: "[Morell] did knowingly touch James W. Surber in a rude, insolent, or angry manner, to wit: stabbed him in the side with a knife numerous times; said touching being committed with a deadly weapon, to wit: knife contrary to the form of the statutes in such cases made and provided by I.C. 35–42–2–1(a)(3) and against the peace and dignity of the State

of Indiana." Appellant's Appendix at 11. Thus, to convict Morell of battery as a class C felony, the State needed to prove that Morell knowingly or intentionally touched Surber in a rude, insolent, or angry manner and that the touching was committed by means of a deadly weapon.

■ Morell argues that the evidence is insufficient to sustain his conviction because he acted in self-defense. Self-defense is governed by Ind.Code § 35–41–3–2. A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. *Wilson v. State,* 770 N.E.2d 799, 800 (Ind.2002). In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Id.* When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* If a defendant is convicted despite his claim of self-defense, this court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id.* at 800–801. In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. *Id.* at 801 (citing Ind.Code § 35–41–3–2(e)(3) ("[A] person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.")). The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the

evidence claim. *Id.* We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

Morell argues that the evidence was insufficient and that he acted in self-defense because "there was no disproving of a reasonable fear of harm by [Morell]; he simply reacted to [Surber's] attack." Appellant's Brief at 9. Morell also characterizes Surber as the aggressor and argues that Surber "deliberately slamm[ed] the front door on [Morell] out of anger over the apparent hiding of the small pet snake in the residence."[3] *Id.* at 10. The State argues that Morell cannot successfully claim self-defense because he initiated the violence by shoving Surber in the back and even if Morell was not the initial aggressor, he clearly used more force than was necessary by drawing and using a deadly weapon during a fistfight. Morell merely requests that we reweigh the evidence or judge the credibility of the witnesses, which we cannot do. *Wilson,* 770 N.E.2d at 801.

Based upon the facts most favorable to the conviction, which we observe do not reveal that Morell withdrew from the encounter or communicated to Surber the intent to do so, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Morell did not validly act in self-defense and that he was guilty of battery as a class C felony. *See Birdsong v. State,* 685 N.E.2d 42, 46 (Ind.1997) (affirming the defendant's convictions "[b]ecause there existed sufficient evidence from which the court could find that defendant did not validly act in self-defense and that he was guilty as charged"); *Boyer v. State,* 883 N.E.2d 158, 163–164 (Ind.Ct. App.2008) (holding that the evidence was sufficient to convict the defendant of domestic battery as a class A misdemeanor and to negate the defendant's claim of self-defense).

Morell also appears to argue that the incredible dubiosity rule applies. Under the incredible dubiosity rule, "[i]f a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Fajardo v. State,* 859 N.E.2d 1201, 1208 (Ind.2007). "This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Id.* "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.*

In support of his argument, Morell points out inconsistencies between the testimony of the State's witnesses and between his testimony and the testimony of the State's witnesses. We find the incredible dubiosity rule to be inapplicable because the standard for dubious testimony is inherent contradiction, not contradiction between the testimony of witnesses. *See Stephenson v. State,* 742 N.E.2d 463, 487 (Ind.2001) (holding that inconsistencies in the testimony of two or more witnesses go to the weight of the evidence and credibility of the testimony of each individual witness, and such inconsistencies do not make the evidence "incredi-

---

**3.** Morell cites page forty-eight of the Appellant's Appendix, which consists of a portion of Heater's testimony. Our review of this page does not reveal that Heater's testimony supports Morell's argument that Surber deliberately slammed the front door on Morell out of anger. *See* Appellant's Appendix at 48.

ble" as a matter of law), *cert. denied,* 534 U.S. 1105, 122 S.Ct. 905, 151 L.Ed.2d 874 (2002); *White v. State,* 846 N.E.2d 1026, 1032 (Ind.Ct.App.2006) (finding that the incredible dubiosity rule was inapplicable and that by claiming contradictory testimony, instead of inherent contradictions within one witness's own testimony, the defendant was asking the court to reweigh the evidence and assess the credibility of witnesses), *trans. denied.*

### III.

The next issue is whether the cumulative effect of the errors committed at trial warrant reversal of the conviction. Morell's entire argument follows:

> Lastly, [Morell] asserts that the cumulative effect of the errors, violation of the separation of witness order and sufficiency of the self-defense claim warrants reversal, even if no single error does. The Indiana Supreme Court has provided for the possibility that the cumulative effect of trial errors may warrant reversal. *Hubbell v. State,* 754 N.E.2d 884, 895 (Ind.2001).

Appellant's Brief at 13. Morell fails to put forth a cogent argument. Consequently, this issue is waived. *See, e.g., Cooper v. State,* 854 N.E.2d 831, 834 n. 1 (Ind.2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State,* 716 N.E.2d 391, 398 n. 3 (Ind.1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

Waiver notwithstanding, we observe that in *Hubbell,* on appeal, the defendant contended:

> (1) the trial court erred by not dismissing the grand jury's indictment; (2) evidence of the location of the victim's body and cellular phone calls violated the alibi statute; (3) the trial court abused its discretion in admitting physical and testimonial evidence; (4) the admissions of his post-polygraph statements violated his right to cross-examine witnesses; (5) the trial court abused its discretion in admitting a witness' pretrial and trial identification of Hubbell; (6) the State committed several *Brady* violations; (7) he was denied his right to counsel by frequent moves throughout the Department of Corrections; and (8) he was entitled to a new trial based on cumulative error.

*Hubbell,* 754 N.E.2d at 887. In addressing the defendant's argument that even if each of the alleged individual errors was harmless their cumulative effect required reversal, the Court held that "[a]ssuming, for the sake of argument, that under some circumstances the cumulative effect of trial errors may warrant reversal even if each might be deemed harmless in isolation, in this case it is clear in light of the evidence of guilt that no prejudice resulted from any of the erroneous rulings, individually or cumulatively." *Id.* at 895. Here, as previously discussed, Morell waived any argument that the trial court abused its discretion regarding the alleged violation of the separation order, and even assuming Morell had not waived the issue we cannot say that the trial court abused its discretion. We also conclude that the evidence is sufficient to sustain Morell's conviction. We cannot say that the cumulative effect of Morell's alleged errors warrants reversal.

For the foregoing reasons, we affirm Morell's sentence for battery as a class C felony.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.