**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**WILLIAM S. FRANKEL, IV**
Wilkinson Goeller Modesitt
Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

May 17 2012, 9:38 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WENDELL E. MARDIS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )    No. 84A04-1109-CR-481 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1004-MR-1330

**May 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Wendell Mardis (Mardis), appeals his conviction for voluntary manslaughter, a Class A felony, Ind. Code § 35-42-1-3(a)(1).

We affirm.

## ISSUES

Mardis raises four issues on appeal, three of which we find dispositive and restate as follows:

(1) Whether the trial court abused its discretion by admitting autopsy photos of the victim;

(2) Whether the trial court abused its discretion by denying Mardis' motion for a mistrial; and

(3) Whether Mardis' sentence is appropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of April 11, 2010, Robert Rollins (Rollins) went out with friends to the American Legion Post 340 in Terre Haute, Indiana. Tyrone Haywood (Haywood) and Mardis, both of whom were related to Rollins, were at the American Legion Post that night. Rollins talked to Haywood and found him to be in a good mood and not intoxicated. Rollins also observed Mardis mingling about and dancing. As

2

Haywood was leaving to get something to eat, he went over to tell Rollins. Rollins was shaking hands with Haywood when Mardis forced himself between the two men.

Mardis then sat down next to Rollins and put his arm around him. Rollins got up to leave. An argument ensued between Mardis and Haywood and they began fighting. After an initial scuffle that left both men standing, though still facing each other, Mardis backed a few feet away from Haywood. Mardis pulled a gun from his back pocket. Haywood raised his hands up and asked if Mardis was going to shoot him. Mardis shot Haywood in the abdomen. Haywood, still standing but bent over, was shot again by Mardis and fell to the ground. Onlookers tried to help Haywood. Mardis told them not to touch Haywood, but to "let the m***** f***** die." (Transcript p. 514). Mardis headed toward a store room and waited there until the police arrived.

The police arrived, confiscated Mardis' gun, and arrested him. Mardis was taken to the police station where he was questioned. Mardis told the interviewing officer that Haywood hit him. Mardis described the surgeries to his back and said that he could not fight Haywood. After Haywood hit him in the mouth, Mardis said that he reacted in shock and shot Haywood.

On April 15, 2010, the State filed an Information against Mardis charging him with murder, a Class A felony, I.C. § 35-42-1-1(1). From July 11 to July 15, 2011, a jury trial was held. Prior to trial, Mardis admitted to killing Haywood but alleged that he did so in self-defense. During trial, the State sought to introduce six photos of Haywood's autopsy. Mardis' counsel objected on the grounds of unfair prejudice and lack of

3

helpfulness to the jury to determine whether Mardis acted in self-defense. The trial court admitted three out of the six autopsy photographs, ruling that the probative value of the selected photographs outweighed their prejudicial value. Also during trial, a number of jurors encountered disturbances involving spectators outside the court house. The trial court interviewed each juror and found that the jurors would be able to render an impartial verdict. Mardis nevertheless objected and moved for a mistrial which the trial court denied.

On July 15, 2011, the jury found Mardis guilty of the lesser included offense of voluntary manslaughter, a Class A felony, I.C. § 35-42-1-3. On August 10, 2011, the trial court held a sentencing hearing. After hearing argument, the trial court sentenced Mardis to thirty years at the Department of Correction.

Mardis now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Autopsy Photographs*

Mardis first argues that the trial court abused its discretion when it admitted Haywood's autopsy photographs at trial. The admission and exclusion of photographic evidence falls within the trial court's sound discretion and we review the admission of said evidence for an abuse of discretion. *Alsheik v. Guerrero*, 956 N.E.2d 1115, 1128 (Ind. Ct. App. 2011), *reh'g denied*. Relevant photographic evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Gory and revolting photographs may be admissible as long as they are relevant to some

4

material issue or show scenes that a witness could describe orally. *Id.* Photographs, even those gruesome in nature, are admissible if they act as interpretative aids for the jury and have strong probative value. *Id.* The potential that passions may be aroused by the gruesomeness of the photograph is not sufficient grounds for exclusion if the photograph is material and relevant. *Id.*

Further, autopsy photos often present a unique problem because the pathologist has manipulated the corpse in some way during the autopsy. Therefore, autopsy photographs are generally inadmissible if they show the body in an altered condition. *Id.* This is so because the photographs may impute to the accused the handiwork of the pathologist and thereby render the defendant responsible in the minds of the jurors for the cuts, incisions, and indignity of an autopsy. *Custis v. State*, 793 N.E.2d 1220, 1225 (Ind. Ct. App. 2003), *trans. denied.* However, there are situations where some alteration of the body is necessary to demonstrate witness testimony. *See id.*

The three photographs at issue consist of two autopsy photographs depicting Haywood's body on the examination table with a metal dowel rod inserted in the body and one photograph of Haywood's heart held outside of the body with a metal dowel rod inserted. Mardis contends that these photographs were irrelevant to establish the cause of death and to dispute his theory of self-defense, that the photographs were unhelpful to assist the jury to understand Haywood's stance during the shooting, and should also have been excluded because their probative value was outweighed by unfair prejudice. The State argues that photographs were relevant to challenge Mardis' claim of self-defense by

5

demonstrating the trajectory of bullets fired by Mardis. This fact would corroborate witness testimony that Haywood bent over clutching his stomach after the first shot rather than assuming an aggressive stance and moving toward Mardis.

Mardis first argues that since he did not contest the cause of Haywood's death, the photographs were irrelevant. However, Mardis raised the affirmative defense of self-defense to the State's charge of murder. As a result, the State had to disprove beyond a reasonable doubt one of the elements of self-defense. *See* I.C. § 35-41-3-2(a); *Carroll v. State*, 744 N.E.2d 432, 433 (Ind. 2001). We note that "some exhibits are inadmissible because of their prejudicial nature or lack of relevance, but an adversary's offer to stipulate does not bear on admissibility." *Perigo v. State*, 541 N.E.2d 936, 940 (Ind. 1989). By stipulating that he caused the injuries, Mardis is simply attempting to thwart the State's ability to contest his claim of self-defense. We therefore find this argument to be unpersuasive.

Further, we agree with the State that the photographs were relevant and assisted the jury. The coroner used the photographs to describe Haywood's autopsy, including its procedures and the results. More importantly, the coroner testified that the photographs depicted the trajectory of the shots to Haywood's abdomen and heart. The photographs depicting the abdomen were relevant to show that Haywood was shot at an angle that suggested he was leaning back rather than forward at the time of the shooting. This stance would be probative of whether Haywood was the aggressor at the time of the first

6

shot and was therefore relevant to dispute Mardis' theory of self-defense. The same may be said for the photograph of the heart with a dowel rod inserted.

Finally, the probative value of these photographs was not substantially outweighed by any unfair prejudice. The graphic and gruesome character of the photographs is plain to see. However, the photographs were not unfairly prejudicial simply because they depicted the autopsy. The coroner testified in depth about the autopsy, how it was performed, and that he inserted the rods to show the trajectory of the bullet. Consequently, we find little risk that the jury imputed responsibility to Mardis for the coroner's alteration of Haywood's body. Moreover, the jury was not so overcome with passion that it unintelligently convicted Mardis. The jury found Mardis not guilty of murder, but rather voluntary manslaughter, thereby demonstrating "that it carefully applied the evidence to each count and objectively determined whether the State had proven each charge beyond a reasonable doubt." *Stewart v. State*, 945 N.E.2d 1277, 1290-191 (Ind. Ct. App. 2011).

We find therefore find that the autopsy photographs were relevant and their probative value outweighed any potential prejudice to Mardis. Accordingly, the trial court did not abuse its discretion by admitting these photographs into evidence at Mardis' trial.

## II. *Mistrial*

Mardis also appeals the denial of his motion for mistrial. We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Caruthers v. State*, 926

N.E.2d 1016, 1020 (Ind. 2010). The grant of a motion for mistrial is an extreme remedy to be used when no other action may remedy the situation. *Id.* To prevail on appeal, the defendant must show that he was placed in a position of grave peril to which he should not have been subjected. *Id.* We measure the extent of grave peril by examining the "probable persuasive effect" of the conduct on the jury. *Id.*

In *Caruthers*, our supreme court reviewed trial court procedures to assess the potential of prejudice resulting from "extrajudicial comments made to a juror." *Id.* at 1021. Where the risk of prejudice is minimal, the trial court can proceed without further inquiry; however, a finding of substantial risk requires the trial court to collectively interrogate the jury to determine exposure to extrajudicial comments and interrogate the exposed jurors individually. *Id.* While an appropriate response includes collectively admonishing the jury, the trial court retains discretion to take those measures it finds to be necessary and appropriate. *See id.*

In response to spectator actions and comments made towards jurors outside the court house, the trial court examined each juror in chambers with both counsel present. One juror was followed part of the way home by an unidentified vehicle and told three other jurors of the incident. The three jurors confirmed that the juror had told them of the episode. In addition, the three jurors had observed court spectators obstructing jurors' cars as they left the parking lot, shouting that Mardis was a murderer and holding up Haywood's wedding photograph outside of the court house. The trial court asked these

four jurors whether they could remain impartial in light of the occurrences. Each replied that they could.

Following questioning of the four jurors, the trial court went on the record and citing *Caruthers*, announced that it would question the remaining jurors. Rather than address the jury as a whole, the trial court stated that it would continue to question the jurors individually in front of counsel. The remaining jurors mentioned that the jurors discussed the parking lot occurrences, spectator shouting, and the wedding photograph amongst themselves, but each affirmed that no one had directly communicated with them about the case. Further, most affirmed that they did not directly witness spectator comments or the wedding photograph. The remaining jurors were not explicitly asked if they could remain impartial. In denying Mardis' motion for a mistrial, the trial court stated:

> I mean, having had an opportunity to make inquiry of all the jurors and, and not only, I think have their responses demonstrated that they believe they can make a decision based upon, solely upon the evidence in the courtroom, that they will not be influenced by any comments that they have heard outside the courtroom, and not only having heard them but having seen them, I think while they've answered these questions they remarkably all strike me as very dedicated to the task at ha[n]d; they take their responsibilities very seriously, and have not, have given no indication that they've been influenced in any fashion by the events that occurred either Tuesday or Wednesday, and any discussion – the discussion that was had with respect to the Tuesday incident seemed to be limited to what was heard and perhaps some security concerns that they had in terms of getting to their car the next night. And, and no one gave any indication that they had been properly or unduly influenced by that comment.

(Tr. pp. 1104-05).

9

Mardis argues that efforts by spectators had the effect of intimidating and influencing the jury such that he was placed in a position of great peril. The State argues that the isolated comments on Mardis' guilt or occurrences outside of court do not constitute grave peril absent a showing of influence on jury through such comments or actions. As no juror admitted being influenced during individual questioning, the State concludes that no influence occurred.

We agree with the State. Mardis has not shown that the facts here demonstrate that he was placed in a position of grave peril. "[J]urors need not be absolutely insulated from all extraneous influences regarding the case and that such exposure, without a showing of influence, will not require a new trial." *Caruthers*, 926 N.E.2d at 1021. Simply put, Mardis asks us to infer that because some spectators perpetrated such acts, juror impartiality must have given way to intimidation. However, no juror reported direct communication with any spectator. The four jurors stated that none of the events would impair their ability to remain impartial. The remaining jurors indicated some security concerns but none admitted any bias toward Mardis. In light of the trial court's careful questioning of each juror and their responses, "we cannot infer prejudice where none is shown" and find no abuse of discretion by the trial court's denial of Mardis' the motion for mistrial. *Id.* at 1022.

As a final matter, Mardis points to the trial court's election not to admonish the jurors to disregard the spectators. We note that Mardis did not request an admonishment. As such, we find Mardis' argument waived. Waiver notwithstanding, although

10

admonishment is presumed sufficient to cure prejudice, "the failure to admonish does not per se lead to a finding of abuse of discretion for failure to grant a mistrial." *Tacy v. State*, 452 N.E.2d 977, 982 (Ind. 1983), *reh'g denied*. In sum, Mardis has not demonstrated that the comments and actions by spectators placed him in grave peril. Accordingly, the trial court did not err by denying Mardis' motion for a mistrial.[1]

### III. *Sentencing*

Finally, Mardis disputes the appropriateness of his sentence in light of his character and the nature of the offense. Our review of sentences falling within the statutory range is for an abuse of the trial court's discretion. *Southward v. State*, 957 N.E.2d 975, 979 (Ind. Ct. App. 2011). Under Indiana Appellate R. 7(B), we may review the appropriateness of a sentence authorized by statute. *Id*. Following due consideration of the trial court's decision, App. R. 7(B) permits our revision of a sentence for inappropriateness in light of the nature of the offense and the character of the offender. *Id*. It remains, however, the defendant's burden to persuade us of the inappropriateness of the sentence. *Id*.

Mardis was convicted of voluntary manslaughter, a Class A felony, which carries a range of twenty to fifty years and an advisory sentence of thirty years. *See* I.C. § 35-

---

[1] Mardis also argues that the combined effect of the admission of autopsy photographs and spectator activity involving jurors, even if harmless, constituted cumulative error requiring reversal. Mardis cites to our supreme court's opinion in *Hubbell v. State*, 754 N.E.2d 884, 895 (Ind. 2001), but otherwise fails to present an argument on how the combined effect of these alleged errors constitutes cumulative error. We therefore find his claim waived for lack of argument and in light of our determination that the trial court did not commit error in either instance. *See Morell v. State*, 933 N.E.2d 484, 493 (Ind. Ct. App. 2010).

50-2-4. The trial court sentenced Mardis to thirty years, the advisory sentence. Mardis points to the circumstances that gave rise to the offense to argue that his sentence is inappropriate in light of the nature of the offense. Underlying this matter is the substantial history of violence between the Haywood and Mardis families - all of which stems from the testimony of Mardis' nephew at the trial of Haywood's stepson more than eight years ago. Tensions had reached such a point that Mardis, who had not been involved previously, confided to a friend that the inter-family violence had escalated and things were out of control. However, this atmosphere of violence does not overcome the facts of the shooting. Even though Mardis' back injuries arguably prevented him from fighting Haywood, Mardis shot an unarmed Haywood twice and prevented onlookers from administering assistance to Haywood. Accordingly, we cannot say that Mardis' sentence is inappropriate in light of the nature of his offense.

Mardis also cites to his character as a basis to revise his sentence. However, we do not find his character to be a sufficient basis to revise his sentence. Although the trial court found Mardis' deeds for his community and family as well as his remorse for Haywood's death to be mitigating factors, it did not ascribe them great weight. Further, we cannot ignore Mardis' criminal history, which includes an act of domestic violence and alcohol-related driving convictions, even though the trial court did not find these criminal episodes to be significant. We also cannot ignore the fact that despite the long-standing episodes of inter-family violence, no deaths apparently resulted until Mardis took Haywood's life. We therefore decline to disturb his sentence.

12

Based on the foregoing, we find that the trial court did not abuse its discretion by admitting photos of the victim's autopsy or denying Mardis' motion for a mistrial. We further find that Mardis' sentence is not inappropriate in light of his character and the nature of the offense.

Affirmed.

NAJAM, J. and DARDEN, J. concur