## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 14 2015, 8:26 am

CLERK
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Robert J. Little
Brookston, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darney R. Karim,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 14, 2015

Court of Appeals Case No.
91A02-1502-CR-122

Appeal from the White Superior Court

The Honorable Jeffrey R. Smith, Senior Judge

Trial Court Cause No.
91D01-1407-CM-355

**Kirsch, Judge.**

[1] Following a bench trial, Darney R. Karim was convicted of Class A misdemeanor battery resulting in bodily injury.[1] He presents the following restated issue on appeal: whether the evidence was sufficient to convict him because the victim's testimony was incredibly dubious.

[2] We affirm.

## Facts and Procedural History

[3] From approximately March 2014 to early May 2014, Dawn Dillon ("Dillon") and Karim were in a dating relationship. Around noon on Monday, July 28, 2014, Dillon got in her car in her driveway. She intended to run a quick errand to the store, as she was expecting her parents and children to arrive soon, and she wanted to make lunch for them. Dillon realized she could not find her cell phone, so she parked the car, stepped out, and looked back inside it for the phone, which she found and held in her right hand. At that time, Karim suddenly grabbed Dillon's right wrist. Dillon had not known Karim was there.[2]

[4] Karim demanded that Dillon allow him into her house to retrieve belongings that he had left there. Dillon refused. Karim turned Dillon around to face him, and he grabbed her left upper arm. The car door was open, and Dillon's back was to the car. She struggled to extricate herself from Karim's grasp, moving

---

[1] *See* Ind. Code § 35-42-2-1(b)(1), (c).

[2] Dillon lived in a home in the country, along gravel roads. The end of her driveway was near an intersection with a stop sign. She frequently heard the sounds of gravel and stopping cars, and, therefore, she did not notice or hear when Karim and another individual arrived and parked at the end of her driveway.

her arms and kicking at him. Dillon told Karim to let her go before someone passing by on the nearby road saw him and called the police. The incident lasted about a minute, and Karim released her and left.

[5] At that time, Dillon saw red marks on her arms and legs from the encounter, but did not believe that what she saw was enough to report the incident to the police. She went to work the next day, and she began to notice bruising. One or more of Dillon's friends encouraged her to report the incident to law enforcement. Dillon's July 29 work shift ended at 10:00 p.m. She went to a friend's home, and that friend convinced Dillon to contact law enforcement. At approximately 2:45 a.m. on July 30, Dillon went to the White County Sheriff's Department to make a police report.

[6] Dillon met with Deputy Aaron Page and told him what had occurred on July 28. Deputy Page photographed bruises on Dillon's right wrist, left arm, and right leg. Thereafter, Deputy Page attempted to locate Karim, but was unable to find him. On July 30, 2014, the State charged Karim with Class A misdemeanor battery resulting in bodily injury. In November 2014, Karim filed a notice of alibi defense.

[7] Karim waived trial by jury, and at the February 2015 bench trial, Dillon testified to the above course of events. Deputy Page also testified, describing that, in the early morning hours of July 30, he met with Dillon at the Sheriff's Department offices regarding the encounter with Karim that occurred in the driveway of Dillon's home on the afternoon of July 28. The photographs that

Deputy Page had taken of Dillon's injuries were admitted into evidence without objection. Upon questioning, Deputy Page opined that the bruising on Dillon's wrist and arm were consistent with being grabbed, and with regard to the bruising on her shin, Deputy Page recalled that Dillon thought she may have struck the car's open driver's side door while she was kicking at Karim.

[8] Karim testified at trial, acknowledging that he had been in a prior relationship with Dillon, but stating that he had not seen her since sometime in June 2014. He expressly denied that he came to her home on Monday, July 28, testifying that on that date he was out of town at a lake house. He did not know who owned the lake house, and said he was there at the invitation of another friend, named Devin, who did not testify at trial. Karim did not know where Devin was living at the time of trial or how to contact him. The trial court took the matter under advisement, and the following day, the trial court issued an order finding Karim guilty as charged. Karim now appeals.

## Discussion and Decision

[9] Karim's sole claim on appeal is that the evidence presented was insufficient to convict him. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence, nor judge the credibility of witnesses. *McClellan v. State*, 13 N.E.3d 546, 548 (Ind. Ct. App. 2014), *trans. denied*. Rather, we consider only the probative evidence and reasonable inferences supporting the conviction. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not

be disturbed. *Id.* We affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Boyd v. State*, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008), *trans. denied*.

[10]  Indiana Code section 35-42-2-1(b)(1) provides in relevant part that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor." However, the offense is a Class A misdemeanor "if it results in bodily injury to any other person." Ind. Code § 35-42-2-1(c). Indiana Code section 35-31.5-2-29 defines bodily injury as "any impairment of physical condition, including physical pain," and scratches, bruises, and red marks are sufficient to establish bodily injury. *See Bailey v. State*, 979 N.E.2d 133, 138 n.11 (Ind. 2012) (citing to *Hanic v. State,* 406 N.E.2d 335, 337-38 (Ind. Ct. App. 1980), where evidence of red marks, bruises, and minor scratches was sufficient to support a finding of bodily injury). Thus, in order to prove that Karim committed Class A misdemeanor battery, the State was required to prove that he knowingly or intentionally touched Dillon in a rude, insolent, or angry manner, and that such touching resulted in bodily injury to her.

[11]  Here, Karim argues that the evidence was insufficient because Dillon's testimony was incredibly dubious. In general, the uncorroborated testimony of one victim is sufficient to sustain a conviction. *Holeton v. State*, 853 N.E.2d 539, 540 (Ind. Ct. App. 2006). However, the "incredible dubiosity rule" provides that "a court may 'impinge on the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or

coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Govan v. State*, 913 N.E.2d 237, 243 n.6 (Ind. Ct. App. 2009) (quoting *Murray v. State,* 761 N.E.2d 406, 408 (Ind. 2002)), *trans. denied.* The application of this rule is rare and is limited to situations in which a sole witness presents inherently improbable testimony such that no reasonable person could believe it and there is a complete lack of circumstantial evidence of a defendant's guilt. *Id.* The standard to be applied is "'whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.'" *Morell v. State*, 933 N.E.2d 484, 492 (Ind. Ct. App. 2010) (quoting *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007)). While the incredible dubiosity standard is not impossible to meet, it requires great ambiguity and inconsistency in the evidence. *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015).

[12] In support of his claim, Karim mentions some minor inconsistencies in Dillon's testimony regarding which of two Zippo-brand Detroit Lions lighters Karim appeared to be holding in his hand when he grabbed Dillon's wrist. He claims that her testimony about the lighter was not consistent, and, furthermore, it "runs counter to human experience" that he could have been holding a lighter in his hand as he grabbed her. *Appellant's Br.* at 6. He also asserts that it "defies logic" that if, as Dillon claims, Karim went to her home "intent on retrieving his personal belongings," he would thereafter simply leave the premises without the desired items. *Id.* at 7. Karim has failed to persuade us that any perceived inconsistencies in Dillon's testimony rise to the level of incredible dubiosity. Her testimony was not inherently improbable or equivocal, and there was

circumstantial evidence, namely bruising, that was consistent with her description of the encounter. Deputy Page also confirmed that the injuries to her wrist and arm appeared consistent with being grabbed.

To the extent that Karim's argument is that Dillon's testimony was incredibly dubious because her testimony contradicted his, *i.e.*, Dillon said Karim was at her house on July 28, and he said he was at a lake house on July 28, the incredible dubiosity rule is not applicable in that context. *See Morell*, 933 N.E.2d at 492 (standard for dubious testimony is inherent contradiction, not contradiction between testimony of witnesses). Karim's actual claim is one asking us to believe his testimony over hers. That is merely an invitation to reweigh evidence, which we cannot do on appeal. *McClellan*, 13 N.E.3d at 548. The State presented sufficient evidence to convict Karim of Class A misdemeanor battery resulting in bodily injury.

Affirmed.

Najam, J., and Barnes, J., concur.