## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2020, 8:40 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Branham,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 11, 2020

Court of Appeals Case No.
19A-CR-2042

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1807-MR-23319

**Crone, Judge.**

# Case Summary

[1] Kenneth Branham appeals his convictions for murder and level 2 felony robbery, claiming that the evidence is insufficient to rebut his claim of self-defense. We affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. On June 18, 2018, Scott Forsberg hosted a cookout for a few of his neighbors. Branham came to Forsberg's cookout and began drinking alcohol. A while later, another neighbor, Jeffrey Bowers, arrived. Bowers was not acquainted with Branham but noticed that Branham appeared to be "belligerently drunk." Tr. Vol. 2 at 142, 147. Not long after, Sheila Bennett arrived. She did not drink alcohol, but she noticed that the three men were drinking alcohol and that Branham was wearing black swim trunks and black and white Nike flipflops. Forsberg had his handgun lying in front of him on the patio table, which Bennett and Bowers characterized as normal behavior for Forsberg. During the cookout, Branham taunted Bowers and threatened to "kick [his] a*s," so Bowers left. *Id*. at 144. After a while, Forsberg took a quick trip to a nearby liquor store to buy more alcohol. Meanwhile, Branham continued to sit at the table and drink alcohol.

[3] A few minutes after Forsberg left, Bennett walked to her apartment to use the restroom but returned to the cookout because she did not have her keys. At about the same time, Forsberg returned from the liquor store. Forsberg placed bottles of vodka and fruit juice on the table, where Branham was still seated.

Suddenly, without either man having said a word, Branham "jumped up, picked the gun up off the table[,] and shot [Forsberg]." *Id*. at 158. Forsberg fell to the ground and said, "Dude you just shot me." *Id*. Branham demanded Forsberg's cellphone, money, and keys. He waved the handgun around and ordered Bennett to give him her cellphone and get into the swimming pool. Bennett gave him her phone because she "was afraid he'd kill [her] if [she] didn't." *Id*. at 159. Branham returned his attention to the injured Forsberg, who had fallen from a seated position to his back, and again demanded money and keys. Before Bennett ran from the property, she heard Branham threaten to shoot Forsberg again if he did not stay quiet and order Forsberg, "Give me your f\*\*king car keys and all your f\*\*king money." *Id*. at 160. Branham kicked Forsberg's face, rummaged through his pockets, and kicked him again. Surveillance camera footage recovered from Forsberg's house captured several of the events, beginning with the shooting and including Branham pocketing Bennett's phone, searching Forsberg's clothing and vehicle, and returning to search Forsberg's pockets and grab an item from Forsberg's fingers before leaving the scene. State's Exs. 63A, 63B, and 64.

[4] Meanwhile, Bennett ran to a nearby auto-parts store and phoned 911. Shortly thereafter, Indianapolis Metropolitan Police Department officers arrived at the scene and found Forsberg on the ground, bleeding from his left chest/upper abdomen. Forsberg was transported by ambulance to a nearby hospital. Police recovered several items, including black and white flipflops, a beer can, and a plastic cup. Subsequent DNA and fingerprint tests linked the items to

Branham. Forsberg underwent surgery and remained hospitalized until his death on July 12, 2018, as a result of complications from the gunshot wound.

[5] The State charged Branham with murder, felony murder, and level 2 felony robbery. During his jury trial, Branham raised a self-defense claim, alleging that Forsberg pulled the handgun out of his pocket, pointed it at Branham's face, and said, "I'm going to blow your f**king head off, I'll kill you." Tr. Vol. 3 at 45. Then, according to Branham, he jumped up and turned over the table, and a twenty- to thirty-second struggle for the handgun ensued. Branham claims that he wrested control of the handgun and accidentally shot Forsberg. He testified that he stole the cellphone so that he could use it to call 911. There is no evidence of him making that call.

[6] The jury convicted Branham as charged, and the trial court entered judgment on his murder and robbery convictions and sentenced him to an aggregate sixty-five-year term. Branham now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[7] Branham challenges the sufficiency of the evidence to rebut his self-defense claim. We review a challenge to the sufficiency of evidence to rebut a self-defense claim using the same standard as for any sufficiency of evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2003). We neither reweigh evidence nor judge witness credibility. *Id*. If sufficient evidence of probative value supports the verdict, it will not be disturbed. *Id*. A single witness's

uncorroborated testimony is sufficient to support a conviction. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800–801.

[8] Branham admits that he shot Forsberg but claims that he did so in self-defense. "A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act." *Morell v. State*, 933 N.E.2d 484, 491 (Ind. Ct. App. 2010). "A person is justified in using reasonable force against any other person to protect the person … from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). To prevail on a self-defense claim, the defendant must show that he: "(1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Morell*, 933 N.E.2d at 491. "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Id*. The State satisfies this burden by presenting evidence of probative value from which a reasonable trier of fact could have found that the defendant did not validly act in self-defense and that he was guilty of the offenses charged. *Id*. at 492.

> [A] person is not justified in using force if … the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the

other person nevertheless continues or threatens to continue unlawful action.

Ind. Code § 35-41-3-2(g)(3).

[9] The record supports Branham's assertion that as an invited guest, he had a right to be at Forsberg's cookout. Branham maintains that Forsberg was the instigator/aggressor and that he acted merely out of fear of death or serious bodily injury. Specifically, he claims that Forsberg pulled the handgun out of his pocket and said, "I'm going to blow your f**king head off, I'll kill you." Tr. Vol. 3 at 45. He maintains that he and Forsberg struggled over the handgun for about twenty to thirty seconds before he wrested control of it and accidentally shot Forsberg. With respect to his theft of the cellphone, Branham claims that he needed to take it so that he could phone 911. There is no record of his ever having made that call.

[10] Branham asserts that a close review of the video surveillance footage supports his testimony and clearly establishes his self-defense claim. He therefore submits that this is one of the narrow circumstances in which we are permitted to reweigh the evidence in his favor. *See Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017) (articulating narrow exception when reviewing court may reweigh facts in favor of defendant's self-defense claim, if video evidence "indisputably contradicts the [factfinder's interpretation] … such that no reasonable person could view the video and conclude otherwise."). This applies only where the video is a clear and "complete depiction of the events at issue." *Id*. "In cases where the video evidence is somehow not clear or complete or is subject to

different interpretations, we defer to the [factfinder's] interpretation." *Id*. at 699-700.

[11] Here, the video evidence is incomplete. It comprises footage from two stationary home surveillance cameras and does not include sound. Due to the stationary position of the cameras, there is no footage involving the events taking place at the table, where the handgun had been placed, where Branham sat drinking, and where, by all accounts, the conflict began. Thus, many of the significant events were not within either camera's view. The first significant event captured on video was the shooting itself – with the entrance of Branham and Forsberg into the left side of the frame and with Branham advancing and Forsberg backing up just as Branham shot him. The video also captured Branham's initial search of Forsberg at gunpoint, his pocketing of a cellphone, Bennett's abrupt turn and rapid departure, and Branham's apparent lack of urgency to call 911, as evidenced by his protracted and repeated searches for Forsberg's valuables after the shooting. The video simply did not capture the most controversial events, those immediately before the violence erupted. Moreover, nothing in the video depicts Branham as having been in fear for his life. In short, the video evidence neither supports Branham's self-defense claim nor contradicts Bennett's eyewitness testimony.

[12] In sum, Branham had a right to be at the cookout as Forsberg's invited guest, but beyond that, he has failed to establish that the State did not meet its burden of rebutting his self-defense claim. The video evidence supports the jury's conclusion that Branham was at least a willing participant in, if not the

instigator of, the violence. Branham's testimony that Forsberg initiated the violence by pointing the gun at him and threatening to kill him and that he shot Forsberg accidentally after a long struggle for the handgun is controverted by Bennett's testimony that "[t]here was no struggle," and that neither man said a word before Branham suddenly shot Forsberg. Tr. Vol. 2 at 158, 163. The jury was under no obligation to credit Branham's self-serving, uncorroborated version of the shooting. *See McCullough v State*, 985 N.E.2d 1135, 1139 (Ind. Ct. App. 2013) (even where defendant undisputedly had right to be where he was at time of shooting, the only evidence supporting his account was his self-serving statements, and jury was not obligated to believe him), *trans. denied*. We decline Branham's request to reweigh the evidence in his favor. Accordingly, we affirm.

[13] Affirmed.

Bailey, J., and Altice, J., concur.