**Eddie W. HENSON, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 77S04–0210–CR–529.

Supreme Court of Indiana.

April 14, 2003.

Susan K. Carpenter, Public Defender of Indiana, Indianapolis, IN, Gregory L. Lewis, Deputy Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## ON PETITION FOR TRANSFER

SULLIVAN, Justice.

Defendant Eddie Henson, Jr., was convicted of battery by body waste, for throwing a container full of feces and urine at a correctional officer while he was incarcerated at the Wabash Valley Correctional Facility. He appeals the conviction, arguing that he is entitled to a new trial because the judge refused to instruct the jury that it could find Defendant acted in self-defense. We find that Defendant was not entitled to such an instruction both because he provoked the confrontation and there was no imminent threat of violence.

*Background*

The evidence most favorable to the judgment indicates that on November 7, 2000, Defendant was an inmate at the Wabash Valley Correctional Facility. Upset over the earlier removal of certain items from his cell by correctional officer Terry Zeabart, Defendant cursed and threatened bodily harm to officers Zeabart and Jason Brown. Forty-five minutes later, officer Brown, accompanied by officers Zeabart, Sharon Sachtjen, and Figg (whose first name is not in the record), arrived at Defendant's cell to move him to a more restrictive cell block for threatening staff members. Defendant dipped a plastic container into his toilet filling the container with fresh urine and feces. Officer Brown asked Defendant to place his hands into the cuffport to be handcuffed. Instead, Defendant cursed at the officers and called them "Nazis" as he threw the waste through the door. The waste splashed on officers Brown, Zeabart, and Sachtjen.

On January 24, 2001, the State charged Defendant with three (3) counts of Battery by Body Waste.[1] Defendant was found not guilty of Counts I and III, Battery by Body Waste on correctional officers Zeabart and Sachtjen. The jury found the Defendant guilty of Count II, Battery by Body Waste on officer Brown.

The Court of Appeals found reversible error in the trial court's failure to give the jury Defendant's requested instruction that it could find that his conduct constituted self-defense. *Henson v. State*, No. 77A04–0110–CR–431 (Ind.Ct.App. Aug.6, 2002), 773 N.E.2d 376 (table). Judge Friedlander dissented. We granted transfer, 2002 Ind. LEXIS 814 (Ind. Oct. 25, 2002), and now generally adopt the approach advocated by Judge Friedlander.

*Discussion*

■ Defendant asserts that the trial court erred in refusing to read to the jury his tendered instruction on self-defense. The tendered self-defense instruction, modeled after Indiana Pattern Jury Instruction 10.03, read

The defense of self-defense is defined in part by law as follows:

a. A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the immi-

---

1. *See* Ind.Code § 35–42–2–6(c) ("A person who knowingly or intentionally in a rude, insolent, or angry manner places blood or another body fluid or waste on a law enforcement officer or corrections officer identified as such and while engaged in the performance of official duties ... commits battery by body waste, a Class D felony.")

nent use of unlawful force. No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

b. A person is justified in using reasonable force against another person if he reasonably believes that the force is necessary to prevent or terminate the other person's entry of or attack on his dwelling or curtilage.

c. With respect to property other than a dwelling or curtilage, a person is justified in using reasonable force against another person if he reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass on or criminal interference with property lawfully in his possession.

d. Notwithstanding subsections (a), (b), and (c) of this section, a person is not justified in using force if:

1. he is committing, or is escaping after the commission of a crime;

2. he provokes unlawful action by another person with intent to cause bodily injury to the other person; or

3. he has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving this defense beyond a reasonable doubt.

■ The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for abuse of discretion. *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind.1999), *cert. denied*, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). "In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider

the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *Lampkins v. State*, 778 N.E.2d 1248 (Ind.2002).

Defendant argues and the State concedes that Defendant's tendered instruction on self-defense correctly stated the law and that the substance of the instruction was not covered by others given. The decisive question in this case is whether there is evidence in the record to support the giving of a self-defense instruction.

■ A valid claim of self-defense is a legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000). "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force." Ind.Code § 35–41–3–2 (2001). A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. *White v. State*, 699 N.E.2d 630, 635 (Ind. 1998).

The State argues that Defendant was not entitled to a self-defense instruction because he "provoked, instigated and willingly participated in the violence." (Appellee's Pet. to Trans. at 8 (quoting *Driver v. State*, 760 N.E.2d 611 (Ind.2002)).) Furthermore, the State contends that Defendant was not in reasonable fear of death or great bodily harm. We agree with the State on both points.

Defendant claimed at trial that he believed Officer Brown was coming to "beat him." The sole evidence supporting Defendant's belief came from Defendant's own testimony.

Defendant testified that the guards had battered other inmates and previously beaten him three times. He also stated that he knew that inmates had been moved to another cell as a pretext for giving guards an opportunity to beat them. According to Defendant's testimony, when he approached Officer Brown about the things missing from his cell, Brown responded by removing his watch and threatening to "beat him into the pavement." Defendant further testified that before leaving the initial confrontation, Officer Brown said, "I'll be back to beat you into the pavement." Later, as the four officers began walking toward his cell, Defendant heard other inmates yelling, "They're coming to get you!" and "Here comes Brown to beat Ed up!" Upon reaching the cell, Officer Brown stated, "Cuff up. You know what time it is." According to Defendant, he felt "threatened and defenseless," and he only intended to throw body waste on Officer Brown to repel his attack, with no intention of hitting the other two officers.

Defendant's testimony notwithstanding, the record indicates that his actions were not without fault. The initial confrontation that gave rise to Defendant's fear of retribution by the officers was provoked by his initial confrontation and violent epithet directed at officers Brown and Zeabart. Defendant cursed officer Zeabart, threatened to kill him and his family, and threatened to "pull his eyeballs out" and "throw them down the range." Defendant also threatened to "pull out the eyeballs" of officer Brown and "play with them like marbles." Defendant was "jumping up and down," irate and angry. Defendant yelled, screamed, and refused several orders to be locked up in his cell. Sergeant Russell VanArsdale instructed the four corrections officers to move Defendant to a more restrictive cell due to his threats and refusal

to lock up. Thus, Defendant's threats precipitated his removal to a more secure cell unit, which required the officers to return to his cell to facilitate that removal. Defendant's belief, reasonable or not, that the officers natural response to the earlier confrontation would be violent, does not negate his initial wrongful action in instigating the situation.

■ Furthermore, there is nothing in the record to sustain Defendant's contention that he was reasonable in his belief of imminent bodily harm. The requirement that the threat be *imminent* is an acknowledgement that oftentimes combatants make threats of violence which are never carried out. A person claiming self-defense cannot reasonably base a belief that the threat is imminent on the actions of another who has withdrawn from the confrontation.

■ The 'reasonableness' of a defendant's belief that he was entitled to act in self-defense is determined from that point in time at which the defendant takes arguably defensive action. That belief must be supported by evidence that the alleged victim was imminently prepared to inflict bodily harm on the defendant. When a defendant arms himself or herself with a weapon before an imminent threat exists in a premeditated strategy to retaliate for past violence (rather than to protect against the imminent use of unlawful force), a self-defense instruction is not available. While the criminal code is willing to excuse the use of force in certain circumstances to protect against certain unlawful activity, it does not countenance and will not sanction premeditated retaliation for past violence.

Defendant armed himself for a premeditated attack on the corrections officers before the officers arrived. Defendant started using the toilet five minutes before the officers returned to his cell. Other inmates yelled to warn Defendant that the

officers were coming to his cell. Defendant "jumped off" of the toilet and dipped a container into his toilet, filling the container with body waste. Upon their return to Defendant's cell, neither officer Brown, nor any of the other officers, made any gestures outside of those normally associated with removing a prisoner from his cell. Officer Brown never raised his hands or made any threatening actions against Defendant in the moments immediately before Defendant threw his bodily fluids on the officers. *See White,* 699 N.E.2d at 635. Defendant's fear and apprehension of danger may have arisen from the previous incidents that he claimed occurred. However, the circumstances under which he armed himself and attacked the officers do not reasonably suggest that he was in any imminent danger of bodily harm.

### Conclusion

Having previously granted transfer pursuant to Indiana Appellate Rule 58(A), thereby vacating the opinion of the Court of Appeals, we now affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.