**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SWARAY E. CONTEH**
The Law Office of Swaray Conteh
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AYOADE ADEWOPO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A05-1107-CR-380 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1103-CM-257

**February 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Ayoade Adewopo appeals his conviction for domestic battery as a class A misdemeanor.[1] Adewopo raises two issues which we consolidate and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

The facts most favorable to the conviction follow. In the spring of 2011, Adewopo and his wife Adefunke were going through a divorce and had an informal "agreement" regarding custody of their son in which "anytime [Adewopo] wanted to pick [the child] up, he just maybe [would] call [Adefunke] or send [her] a text." Transcript at 6. On Saturday, March 5, 2011, Adewopo picked up his son from Adefunke and told her that he would bring the child back on Monday, March 7, 2011, prior to going to work. The child was supposed to attend a therapy appointment on the morning of March 7, but Adewopo rescheduled it for the evening, and he brought the child to the appointment and did not take him to Adefunke. Adefunke, knowing that her child was at therapy, then "showed up" at the therapist's office and discovered that Adewopo was not present when she arrived. Id. at 8. Adefunke then waited at the office because the "therapist had advised that . . . she wanted the family to be there, and also . . . so that [we could] see what the therapist is doing with him so we know what to do with him at home." Id. Adefunke intended to take her son with her from the therapy appointment.

At some point during the therapy session, Adewopo returned and asked Adefunke if she "was there to pick [their son] up," and she replied affirmatively. Id. at 9. After the therapy, when the two were standing outside, Adewopo, who at that point was holding the child, stated that he "was going to keep him until Wednesday," and Adefunke

_____
[1] Ind. Code § 35-42-2-1.3(a) (Supp. 2006).

2

questioned who would care for the child while Adewopo was at work. Id. Adewopo did not reply. After Adewopo placed the child in the car seat but before he had buckled the child into the seat or started the vehicle, Adefunke attempted to "get [her] son out" of the vehicle and Adewopo "pulled" her, "swung [her] around and then pushed [her] to the ground," causing her pain. Id. at 10. Adewopo yelled to a passenger in the vehicle to lock the car doors, and he "rushed to the driver's side and got inside the car." Id. at 11. Before Adewopo could start the vehicle, Adefunke attempted to open the car door and told Adewopo "that [she] had to get [her] son," and Adewopo then exited and "knocked [her] down on the ground a second time," which caused Adefunke pain. Id. While Adefunke was on the ground, Adewopo kicked her. Soon after, the therapist "rushed out of the office and they were like screaming 'Are you okay, are you okay, do you want us to call 911?'," and then Adewopo "sped off" in his vehicle. Id. at 11-12. Adefunke was examined by a doctor who indicated that she had a hematoma on her thigh causing pain that lasted for about five days.

On March 10, 2011, the State charged Adewopo with domestic battery as a class A misdemeanor. On May 26, 2011, the court held a bench trial at which Adewopo testified that he wanted to keep the child because Adefunke was changing hotels, that she opened the door and was screaming "[j]ust give me my child," and that she tripped and fell. Id. at 63. Adewopo also testified that Adefunke "grabbed" him, tore his jacket, and took his glasses off. Id. at 65. Adewopo also indicated that he was trying to prevent Adefunke from harming the child by grabbing him and that he "never physically touched" Adefunke. Id. at 68. Adefunke testified that she never grabbed or touched Adewopo.

3

Cheryl Gaudin, who worked in the same building as the therapist's office, testified that she witnessed Adewopo and Adefunke arguing, that she witnessed Adewopo move his arm backwards and that Adefunke then fell to the ground, but that she did not witness Adewopo hit Adefunke because "the car door was in the way." Id. at 38. Assistant Chief James Ison of the Greenwood Police Department testified that he spoke by phone with Adewopo after the incident, and that Adewopo indicated to him that Adewopo "never touched her" and that he "got into his vehicle and drove away" following Adefunke's attempt to take the child. Id. at 51.

At the close of the State's case-in-chief, Adewopo moved to have the case dismissed, arguing that the State did not disprove Adewopo's self-defense claim. The court denied the motion. After the defense presented its case, the court found Adewopo guilty as charged, noting that it found Adefunke and the corroborating witnesses to be credible and that it did not believe that Adefunke "fabricated the fact that she was pushed and that's what caused her to fall to the ground." Id. at 79.[2] The court sentenced Adewopo to 365 days with 363 days suspended to probation.

The issue is whether the evidence is sufficient to sustain Adewopo's conviction for domestic battery as a class A misdemeanor. The offense of domestic battery as a class A misdemeanor is governed by Ind. Code § 35-42-2-1.3(a), which provides as follows:

A person who knowingly or intentionally touches an individual who:

    (1)    is or was a spouse of the other person;

---

[2] We note that page 80 of the transcript, which contains a portion of the court's statement finding Adewopo guilty, is not included in the record.

> (2)     is or was living as if a spouse of the other person as provided in subsection (c); or
>
> (3)     has a child in common with the other person;
>
> in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

The charging information alleged that Adewopo knowingly and/or intentionally touched Adefunke, who is or was the spouse of Adewopo and/or has a child in common with Adewopo, "in a rude, insolent, or angry manner, resulting in bodily injury, to wit: pain." Appellant's Appendix at 61.

Adewopo argues that "[t]he evidence presented at trial does not establish beyond a reasonable doubt that [he] formed the requisite mental state to commit the offense of domestic battery." Appellant's Brief at 7. Adewopo argues that the court's finding "that Adefunke's testimony was corroborated by the other witnesses is not supported by the evidence." Id. at 8. Adewopo also asserts that he acted in self-defense, arguing that "whatever action he was taking was to ensure the safety of his young son." Id. at 10. Regarding self-defense, Adewopo argues that "[t]he evidence is clear that [he] did not instigate the conflict or willingly participate in the conflict," that he "was trying to flee from Adefunke," and that "Adefunke tried to grab and remove the child from [his] car." Id. at 11-12.

Generally, when reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness

credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

To the extent that Adewopo argues that he acted in self-defense, we observe that self-defense is governed by Ind. Code § 35-41-3-2. A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Kimbrough v. State, 911 N.E.2d 621, 635 (Ind. Ct. App. 2009) (citing Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003)). In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. Id. (citing Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002)). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. Id. If a defendant is convicted despite his claim of self-defense, this court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Wilson, 770 N.E.2d at 800-801. In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. Id. at 801 (citing Ind. Code § 35-41-3-

6

2(e)(3) ("[A] person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.")). The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Id. We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. Id.

The facts most favorable to the conviction reveal that, following their son's therapy appointment, there was a disagreement about which parent, Adewopo or Adefunke, would be taking the child. As Adefunke attempted to take the child from Adewopo's vehicle, Adewopo "pulled" Adefunke, "swung [her] around and then pushed [her] to the ground," causing her pain. Transcript at 10. Adewopo then yelled to a passenger in the vehicle to lock the car doors and "rushed to the driver's side and got inside the car," and Adefunke again attempted to open the car door and told Adewopo "that [she] had to get [her] son." Id. at 11. Adewopo then exited the vehicle and "knocked [her] down on the ground a second time," which caused Adefunke pain. Id. While Adefunke was on the ground, Adewopo kicked her. As to his claim of self-defense, Adewopo testified that he never physically touched Adefunke.

Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Adewopo did

7

not validly act in self-defense and that he was guilty of domestic battery as a class A misdemeanor. See Bryant v. State, 498 N.E.2d 397, 398 (Ind. 1986) (holding that the defendant's "position amounts to no more than an invitation for us to reweigh the evidence" and noting that the State's evidence was sufficient to negate self-defense); Boyer v. State, 883 N.E.2d 158, 164 (Ind. Ct. App. 2008) (holding that the evidence was sufficient to convict the defendant of domestic battery as a class A misdemeanor and to negate the defendant's claim of self-defense).

For the foregoing reasons, we affirm Adewopo's conviction for domestic battery as a class A misdemeanor.

Affirmed.

MAY, J., and CRONE, J., concur.