**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Aug 26 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN R. HARRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1210-CR-445 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1107-FD-925

**August 26, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Kevin Harris appeals his conviction and sentence for Class D felony criminal recklessness. We affirm.

**Issues**

The issues before the court are:

I.      whether there was sufficient evidence to rebut Harris's self-defense claim; and

II.     whether Harris's sentence is inappropriate.

**Facts**

On July 3, 2011, Harris and Layton Hilkey were at Michelle Hunter's house in Monroeville. At the time, Harris, a long-time friend of Michelle, was living at the residence. Layton was married to Michelle's daughter, Shannon Hilkey. After getting off work, Shannon came over to the residence with chicken and groceries because she had not eaten dinner. Shannon and Layton planned to spend the night at Michelle's house. Layton cooked the chicken on the grill and, prior to taking a shower, told Harris not to eat his portion of the chicken because he was hungry and had not eaten.

When Layton was done taking a shower, he went to the kitchen and found Harris leaning over the counter eating Layton's portion of the chicken. Layton confronted Harris about his chicken and went outside to tell everyone that Harris had eaten his dinner. Shannon and her brother, Charles Nicholas Hunter ("Nick"), went inside to yell at Harris for eating Layton's dinner. Shannon came back outside flustered, while Nick was still inside arguing with Harris. Layton and Shannon then heard their thirteen-year-

old daughter yelling at Harris and Harris arguing back using profanity. Layton went inside, walked up to Harris, and told him not to yell at his daughter in that manner. Harris poked Layton, and Layton shoved Harris to the kitchen floor, leading to a fight between them. Harris ended up on the ground facing up while Layton was on top of him with a fist ready to punch Harris in the face; however, Layton decided against it and retreated from the fight. The situation calmed.

After a few minutes, Harris and Layton were in the kitchen approximately eight feet away from each other. Layton, with his back to Harris, opened the refrigerator door to search for food. Layton heard footsteps and looked up to see Harris charging at him with a knife in his hand. Layton closed the refrigerator door and "squared" his feet, while Harris swung the knife on the left side of Layton's neck. Tr. p. 139. Layton was able to lock Harris's arm holding the knife with his armpit. Nick rushed in and grabbed Harris's wrist and took the knife. Harris went into another room to call 911 and Michelle grabbed the phone from Harris to finish the phone call. Officers from the Allen County Sheriff's Department arrived and placed Harris under arrest. They found no visible injuries on Layton or Harris, and both refused medical treatment.

The State charged Harris with Class D felony criminal recklessness. Harris argued self-defense during the jury trial. The jury rejected his self-defense claim and found Harris guilty as charged. The trial court sentenced him to a term of three years executed. Harris now appeals.

**Analysis**

*I. Sufficiency of Evidence*

Harris challenges the sufficiency of evidence to rebut his claim of self-defense. A valid claim of self-defense is a legal justification for an otherwise criminal act. Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003). "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). When a defendant accused of using non-lethal force has raised a self-defense claim, the State must disprove at least one of the following elements beyond a reasonable doubt: 1) the defendant was in a place where he or she had a right to be; 2) the defendant was without fault; and 3) the defendant had a reasonable fear or apprehension of bodily harm. Boyer v. State, 883 N.E.2d 158, 162 (Ind. Ct. App. 2008).

When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. Morell v. State, 933 N.E.2d 484, 491 (Ind. Ct. App. 2010). If a defendant is convicted despite his or her claim of self-defense, this court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Id. The standard of review for a claim of insufficient evidence to rebut self-defense is the same standard for any sufficiency of the evidence claim. Wilson v. State, 770 N.E.2d 799, 801 (Ind. 2002). We will neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is

4

sufficient evidence of probative value to support the conclusion of the trier of fact, then the judgment will not be disturbed. Id.

Harris claims he had a right to be at the residence because he was living there at the time and states that Layton was the initial instigator. We disagree. "A person claiming self-defense cannot reasonably base a belief that the threat is imminent on the actions of another who has withdrawn from the confrontation." Henson, 786 N.E.2d at 278. The initial scuffle between Layton and Harris ended when Layton retreated from the fight. A few minutes passed after the fight ended, and everyone had an opportunity to calm down. Harris then became the aggressor as he attacked Layton with his knife while Layton had his back to Harris.

Further, Harris claims that he pulled out his knife when "he was backed up into the corner of the kitchen, by [Layton] and others. . . ." Appellant's Br. p. 12. The jury, however, discredited his testimony, and we will not reweigh the evidence. Each of the State's witnesses indicated Harris was the person who instigated the second incident. At no point, after retreating from the fight, did Layton place Harris in imminent fear. We, therefore, find that sufficient evidence was introduced at trial to discredit his self-defense claim and acknowledge the testimony from the State's witnesses that supports the finding that Harris was the aggressor.

## II. Inappropriate Sentence

We now examine whether Harris's sentence is inappropriate under Indiana Appellate Rule 7(B) in light of the nature of the offense and his character. Harris argues that criminal recklessness is not an offense that requires a mandatory executed sentence,

and the trial court could have suspended his sentence.[1]  Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision.  Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).  We also understand and recognize the unique perspective a trial court brings to its sentencing decisions.  Id.  "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate."  Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case."  Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).  We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count."  Id.  Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.  Id. at 1224.  When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended.  Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

---

[1] Indiana Code Section 35-5-2-2(b)(4) indicates that criminal recklessness is not among the list of convictions that require at least the minimum sentence be served.  Indiana Code 35-50-2-2(b)(3), provides that a person, currently convicted of a Class D felony, must serve at least the minimum sentence if that person was on probation, imprisoned, or on parole for a prior, unrelated Class D felony conviction and the last day served was less than three years ago.

Regarding the nature of the offense, we compare Harris's actions with the required showing to sustain a conviction under the charged offense. See Anderson v. State, 989 N.E.2d 823 (Ind. Ct. App. 2013). Criminal recklessness requires a showing of "recklessly, knowingly, or intentionally perform[ing] an act that creates a substantial risk of bodily injury to another person . . . while armed with a deadly weapon." I.C. § 35-42-2-2(a)&(b)(1). Harris attacked Layton with his knife while Layton had his back turned to Harris well after the initial fight ended. His pursuit of Layton, who was unarmed and unaware until the attack, illustrates his egregious actions.

Regarding character, Harris acknowledges his criminal history, which consists of two counts of Class B felony aggravated battery in the 1990s and four misdemeanors. He argues that his two prior felonies took place many years ago and his four misdemeanors did not involve crimes of violence, and he has since "led a law abiding life" prior to this crime. Appellant's Br. p. 15. Harris claims that he is not "the worst of the worst" to warrant the maximum sentence. Id. at 16. "We concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." Wells v. State, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009). Here, it is noteworthy that the knife brandished to commit the offense was similar in nature to that used in his previous Class B felony aggravated battery. The presentence investigation report indicated that he was at a high risk to reoffend and any efforts made to rehabilitate him, as noted by the trial court, have failed. The report also

7

recommended that he serve three years executed. Harris's character does not warrant a lesser sentence.

## Conclusion

Sufficient evidence was presented to rebut Harris's claim of self-defense. Harris's sentence is not inappropriate given the nature of the offense and his criminal history. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.