**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMOTHY J. BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERRICK KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1211-CR-579 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Annie Christ-Garcia, Judge
Cause No. 49F24-1108-FD-55981

**August 26, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Derrick King appeals his conviction for Class B misdemeanor disorderly conduct. We affirm.

## Issue

The issue before us is whether there was sufficient evidence to rebut King's self-defense claim.

## Facts

On August 7, 2011, at approximately 10:30 p.m., Christopher Morris and Laresa Miller drove to Jarlene Rasco's residence in Indianapolis to pick up clothes and a television located inside the garage. Rasco is Miller's mother. King, Miller's former boyfriend, was inside Rasco's residence visiting his children. He and Miller have three children together who reside with Rasco.

Upon arrival, Miller and Morris did not find the items inside the garage. Rasco met both of them in the garage and asked Morris to step outside. Rasco and Miller began to argue, which led to a physical altercation. Morris made his way back inside the garage and saw King holding Miller in a "bear hug," trying to break up the fight. Tr. p. 23. Morris attacked King and a fight ensued. After the fight escalated inside the house, Morris expressed that he did not want to fight in front of the children. As Morris was leaving the house, King ran to the kitchen to grab a knife. King went after Morris with a knife and chased him around Miller's car. Morris then grabbed a curtain rod from the trunk of the car to defend himself. He climbed into the passenger side of the car to leave. King "ran to the car and . . . proceeded to strike [Morris]" in the face. Tr. p. 51. Morris

2

stepped outside the car with the curtain rod and struck King in the head.  At that moment, Officer Jerry Torres arrived and placed them both under arrest.

King was charged with one count of criminal recklessness, one count of battery, and one count of disorderly conduct.  He was convicted only of Class B misdemeanor disorderly conduct.  King now appeals.

**Analysis**

King challenges the sufficiency of evidence to rebut his claim of self-defense.  A valid claim of self-defense is a legal justification for an otherwise criminal act.  Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003) (quoting Wallace v. State, 725 N.E.2d 837, 840 (Ind. 2000)).  "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."  Ind. Code § 35-41-3-2(c).

When a defendant accused of using non-lethal force has raised a self-defense claim, the State must disprove at least one of the following elements beyond a reasonable doubt: 1) the defendant was in a place where he or she had a right to be; 2) the defendant was without fault; and 3) the defendant had a reasonable fear or apprehension of bodily harm.  Boyer v. State, 883 N.E.2d 158, 162 (Ind. Ct. App. 2008) (quoting White v. State, 699 N.E.2d 630, 635 (Ind. 1998)).  When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements.  Morell v. State, 933 N.E.2d 484, 491 (Ind. Ct. App. 2010) (quoting Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002)). If a defendant is convicted despite his or her claim of self-defense, this court will reverse only if no reasonable person could say that

3

self-defense was negated by the State beyond a reasonable doubt.  Id.  We will neither reweigh the evidence nor judge the credibility of witnesses.  Id. at 492.  If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the judgment will not be disturbed.  Id.

King claims that he had permission to visit his children at Rasco's residence the night of the incident.  He indicates that Morris was the initial aggressor and argues that after the fight escalated outside, King "reasonably believed he was still in danger." Appellant's Br. p. 7.  King claims that he did not have a duty to retreat and that he punched Morris while he was in the car because Morris attacked him with a curtain rod prior to that.  However, Morris testified to using the curtain rod after King struck him and we will not reweigh the evidence.  We note, also, that King had an opportunity to end the altercation when Morris left the residence.  King explained during his testimony:

> [Counsel for King]: At some point in time, does the fighting stop?
>
> [King]: The fighting stops after -- it stops for a split second . . . . Morris, he stops, after he gets a couple more hits in and he proceeds out of the door.
>
> * * * * *
>
> [Counsel for King]: . . . . [W]hat do you do next?
>
> [King]: . . . . I proceeded outside because my children is still right there and [Rasco] and [Miller] are still outside fighting . . . .
>
> * * * * *
>
> [Counsel for King]: So you go outside and what happens when you go outside?

4

[King]: When I go outside, Christopher Morris is still on the telephone and I proceed to chase Christopher Morris around the car. That part I did do because he was still fighting . . . .

Tr. pp. 47-48, 50.

"[A] person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor unless <u>the person withdraws from the encounter and communicates to the other person the intent to do so</u> and the other person nevertheless continues or threatens to continue unlawful action." I. C. § 35-41-3-2(g)(3) (emphasis added). "A claim of self-defense will also fail if the person 'uses more force than is reasonably necessary under the circumstances.'" <u>Sudberry v. State</u>, 982 N.E.2d 475, 481 (Ind. Ct. App. 2013) (quoting <u>Harmon v. State</u>, 849 N.E.2d 726, 731 (Ind. Ct. App. 2006)). "A person claiming self-defense cannot reasonably base a belief that the threat is imminent on the actions of another who has withdrawn from the confrontation." <u>Henson</u>, 786 N.E.2d at 278.

Morris testified that after the altercation, he intended to leave with Miller and told King that he did not want to fight in front of the children. Once Morris left the house, King followed him with a knife and chased him around the car until he retrieved a curtain rod from the trunk to defend himself. Further, King walked up to the vehicle and punched Morris in the face after Morris intended to leave. This evidence clearly indicates that any right of self-defense King may have had when Morris initially attacked him no longer existed because he became a mutual combatant and at no time retreated or communicated his intent to withdraw from fighting, while Morris had in fact retreated

5

from the encounter. King further used excessive force when he escalated the fight outside the household with a knife. He, at this point, was no longer defending himself. King's arguments to the contrary are an invitation to reweigh the evidence, which we cannot do.

## Conclusion

We conclude there was sufficient evidence to rebut King's claim of self-defense. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.