## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2016, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dustin Hinz,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 20, 2016<br><br>Court of Appeals Case No.<br>49A05-1508-CR-1067<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Christina R. Klineman, Judge<br><br>The Honorable Marshelle Broadwell, Commissioner<br><br>Trial Court Cause No.<br>49G17-1505-CM-17039 |

**Crone, Judge.**

# Case Summary

Heather Deal suffered injuries during a domestic dispute with Dustin Hinz. The State charged Hinz with four class A misdemeanor batteries. Hinz was convicted of all four counts at a bench trial. The trial court merged counts I, II, and III and sentenced Hinz on counts I and IV. On appeal, Hinz argues that he acted in self-defense and that there is insufficient evidence to support his convictions. We disagree and affirm.

# Facts and Procedural History

The facts most favorable to the convictions demonstrate that in May 2015 Deal and Hinz lived together with their two-year-old son. Their son had been placed in Child Protective Services' custody, and both Hinz and Deal were subject to monthly drug screens. On May 15, 2015, Hinz and Deal went to a community center to request assistance with getting the water in their house turned back on. When they returned home, Deal told Hinz that she was going to her ex-husband's house to take a shower and wash some clothes. Deal asked if he wanted to join her, and Hinz declined. Deal finished at her ex-husband's house and went to pick up a carry-out lunch for Hinz and herself. While Deal was out she received a text from Joy, her caseworker from the Department of Child Services. Joy let Deal know that she would be arriving at her house soon for a drug screen and would wait for her in the driveway. When Deal got home, Joy asked her if she thought Hinz would comply with his drug screen. Deal went to check with Hinz, who was sleeping. Hinz became very hostile; he threw a blanket across the room and started screaming and yelling that Deal

was a "cheating whore." Tr. at 19. Joy tested Hinz and Deal for drugs and then left the residence.

[3] Deal went into the living room to eat her lunch while Hinz continued to rant that she did nothing but cheat on him and that he was tired of being there. Deal repeatedly asked Hinz to gather his things and leave. Deal lit a cigarette, which Hinz took from her, so she went into the bedroom and lit another cigarette. Hinz then grabbed a knife, pulled Deal's hair, and struck her in the face. He told Deal that she was "really going to regret throwing [him] out." *Id*. at 22. Hinz followed Deal as she escaped to the living room. Using one hand, Hinz grabbed Deal's arms and held them over her head against the wall; using his other hand, Hinz held a knife against her throat. Deal screamed as she struggled, which caused redness, bruising, and scratches on her neck. Deal finally escaped and ran through the kitchen to her car.

[4] Hinz followed her outside, picked up a hammer, and continued to threaten Deal by swinging the hammer erratically until she climbed out the passenger window of her car. When Deal was out of the car, Hinz struck her in the face with the hammer, causing a blood blister on her lip and a dark bruise on her chin. Deal went back into the house to retrieve her phone; she tried calling the police but her phone had died. Believing that Hinz had left, Deal returned to her car to charge her phone. Hinz returned, grabbed her cell phone out of her hand, and slapped her in the chest. Deal went into the house and did not return to her car until Hinz left.

Officer Robert Chandler of the Indianapolis Metropolitan Police Department responded to a call from Deal's neighbors. En route, he saw Hinz walking away from the residence carrying a black bag and a hunting knife. Officer Chandler waited for backup before arresting Hinz, and then proceeded to the residence to speak with Deal. Officer Chandler asked Deal questions repeatedly because she was crying and could not focus on what she was trying to say or piece everything together.

The State subsequently charged Hinz with class A misdemeanors: domestic battery (count I), battery resulting in bodily injury (count II), domestic battery (count III), and battery resulting in bodily injury (count IV). The trial court found Hinz guilty as charged, merged counts I, II, and III, and sentenced Hinz on counts I and IV.

## Discussion and Decision

Hinz contends that his actions were in self-defense and thus there is insufficient evidence to support his battery convictions.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (citations omitted).

[8] "A valid claim of self-defense is a legal justification for an otherwise criminal act." *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). To prevail on a claim of self-defense, a defendant must establish that he was in a place where he had a right to be, did not provoke, instigate, or participate willingly in the violence, and had a reasonable fear of death or great bodily harm. *Kimbrough v. State*, 911 N.E.2d 621, 635 (Ind. Ct. App. 2009). The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Id.* The State has the burden of negating at least one of the necessary elements. *Id.* The State can rebut the defendant's claim of self-defense by relying on the evidence of its case-in-chief. *Id.*

[9] Hinz testified to telling Officer Chandler that Deal hit him first, kicked him in his genitals, pushed him down the stairs, swung a hammer at him, tried to run him over with her car, and threatened him with a gun. Officer Chandler testified that Hinz did not mention anything about a hammer, being kicked in the genitals, or being threatened with a gun. Tr. at 82. Officer Chandler also stated that if Hinz had given him that information, it would have been in his report. *Id.*

[10] At trial, Deal claimed that Hinz was the initial aggressor. *Id.* at 19. She testified that he pulled her hair, struck her in the face, held a knife to her throat, and hit her in the face with a hammer which caused redness, bruising, and

scratches on her face and neck. Photographic evidence of Deal's injuries was introduced at trial. She acknowledged that she might have hit Hinz, but only because she was trying to break free from his grasp.

[11] The State provided sufficient evidence to rebut Hinz's claim of self-defense. In essence, Hinz requests us to reweigh the evidence and judge witness credibility, which is for the trier of fact. *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied*. Consequently, Hinz's claim of self-defense fails and we affirm his convictions.

[12] Affirmed.

Najam, J., and Robb, J., concur.