## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 21 2016, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.G., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 21, 2016 <br><br> Court of Appeals Case No. 49A02-1603-JV-414 <br><br> Appeal from the Marion Superior Court, Juvenile Division <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Gary Chavers, Magistrate <br><br> Trial Court Cause No. 49D09-1508-JD-1446 |

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, K.G. was adjudicated a delinquent child for committing what would be Level 3 felony aggravated battery if committed by an adult. K.G. now appeals, contending that the State presented insufficient evidence to rebut her claim of self-defense.

[2] We affirm.

## Facts & Procedural History

[3] On June 16, 2015, K.M. was in a car with several of her friends heading to meet up with more friends at a nearby apartment complex. Along the way, K.M. and her friends saw D.L. walking down the street. There was some simmering tension between K.M. and D.L. because a mutual friend had told K.M. that D.L. wanted to fight K.M. K.M. and her friends pulled over and got out, and K.M. asked D.L. if she wanted to fight her. D.L. said she did not want to fight, and K.M. and her friends returned to the car and prepared to leave. Meanwhile, D.L. called her best friend, fifteen-year-old K.G., and told her that K.M. and some boys had pulled up and were trying to fight her. K.G., who had been in a fight with K.M. the previous summer, told D.L. she was on her way.

[4] After speaking with K.G., D.L. called one of K.M.'s friends out of the car. When he got out of the car, K.M. and the rest of the occupants followed. K.G., who lived very close by, then came running down the street. At that time, D.L. asked K.M. whether she wanted to fight her. D.L. kept "walking into" K.M., and D.L. had a "jaw steel quick link," which is more commonly referred to as a

carabiner and can be used as brass knuckles, in her hand. *Transcript* at 8, 56. K.G. pulled D.L. aside and took the carabiner from her, stating that D.L. could seriously hurt K.M. with it and consequently "get in some really big trouble". *Id.* at 82.

[5] D.L. and K.M. again squared off and continued arguing. Eventually, one of the boys who had arrived with K.M. pushed K.M. into D.L., and the girls began fighting. Several of the bystanders, including K.G., recorded parts of the fight with their cell phones.[1] At one point, K.G. got in the middle of the fight and kicked K.M. in the stomach. One of the boys dragged K.G. away while K.M. and D.L. continued to fight. K.G. then re-entered the fight and tried to separate the girls, all while still gripping the carabiner in her hand. As K.G. and D.L. backed away from K.M., D.L. spat at K.M. When K.M. then tried to walk toward D.L. and K.G., one of the boys grabbed her from behind and dragged her away. K.M. broke free and again walked toward K.G. and spat at her. In response, K.G. shouted "b*tch, you (indiscernible) f*cked up" and threw the carabiner at K.M.'s face, striking her in the left eye. *Exhibit Volume*, State's Ex. 1. K.M. immediately fell to the ground, and as she lay there bleeding, K.G. repeatedly screamed "that b*tch just spit in my mother f*cking face" and spat twice in K.M.'s direction. *Id.* K.G. and D.L. then left together.

---

[1] Four such videos were placed into evidence at the fact-finding hearing.

K.M. was later transported to the hospital by ambulance, and despite undergoing two surgeries, she has been rendered virtually blind in her left eye.

[6] As a result of these events, the State filed a petition alleging that K.G. was a delinquent child for committing acts that would be Level 3 felony aggravated battery and class B misdemeanor battery by bodily waste if committed by an adult. A fact-finding hearing was held on December 4 and 8, 2015, at which K.G. argued that she acted in self-defense. On January 7, 2016, the juvenile court entered a true finding as to the aggravated battery allegation and a not true finding as to the battery by bodily waste allegation. A dispositional hearing was held on February 3, 2016, and K.G. was placed on probation. K.G. now appeals.

## Discussion

[7] On appeal, K.G. argues that the State presented insufficient evidence to rebut her self-defense claim. The standard for reviewing a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same standard used for any claim of insufficient evidence. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the judgment will not be disturbed. *Id.* "A valid claim of self-defense is legal justification for an otherwise criminal act." *Id.*

[8] To prevail on her self-defense claim, K.G. must show that she: (1) was in a place where he had a right to be; (2) acted without fault; and (3) was in

reasonable fear or apprehension of bodily harm. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003); *see also* Ind. Code. § 35-41-3-2. A person who provokes, instigates, or participates willingly in the violence does not act without fault for the purposes of self-defense. *Shoultz v. State*, 995 N.E.2d 647, 660 (Ind. Ct. App. 2013). Additionally, the degree of force used must be proportionate to the requirements of the situation, and a claim of self-defense will fail where a person has used more force than is reasonably necessary to repel an attack. *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014), *trans. denied*.

[9] When a self-defense claim is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). The State may meet its burden by offering evidence directly rebutting the defense, by affirmatively showing that the defendant did not act in self-defense, or by relying upon the sufficiency of the evidence from its case-in-chief. *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). If a defendant is convicted despite a claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[10] K.G.'s arguments on appeal are nothing more than a request to reweigh the evidence, which we will not do on appeal. When D.L. called K.G. and told her that K.M. was trying to fight her, K.G. ran to the scene. When D.L. and K.M. started to fight, K.G. used her cell phone to record the fight until she chose to enter the fray herself and kicked K.M. in the stomach. When K.M. spat at her, K.G. retaliated by throwing the carabiner, which K.G. knew could seriously

injure someone, at K.M.'s face. As K.M. lay on the ground bleeding, K.G. continued to scream obscenities and spat twice in K.M.'s direction. This amply supports a finding that K.G. did not act without fault, and K.G.'s demeanor both before and after throwing the carabiner supports a finding that she acted out of rage, not fear. The evidence also supports a finding that K.G. used a disproportionate degree of force against K.M. Accordingly, the State presented sufficient evidence to support the juvenile court's finding that she did not act in self-defense.

[11] Judgment affirmed.

[12] Bradford, J. and Pyle, J., concur.