## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 10 2017, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles C. Chatman,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 10, 2017

Court of Appeals Case No.
49A02-1606-CR-1205

Appeal from the Marion Superior Court.
The Honorable Amy J. Barbar, Magistrate.
Cause No. 49G02-1512-F5-45981

**Barteau, Senior Judge**

## Statement of the Case

Charles Chatman appeals his conviction of battery by means of a deadly weapon, a Level 5 felony.[1] We affirm.

## Issue

The sole issue Chatman raises for our review is whether the State failed to disprove beyond a reasonable doubt his self-defense claim.

## Facts and Procedural History

Raymond Vandivier (Ray) owned a combination liquor store and bar (bar) located on a corner in Indianapolis. Because the bar was in an area that had high incidents of crime, Ray kept a baseball bat in the bar and carried a concealed handgun, for which he was licensed. Ray's son, Vincent, often worked at the bar. The bar had a security camera surveillance system. *See* State's Ex. 4.

In the early evening, on December 24, 2015, Ray was working in the bar's office and Vincent was working in the bar area. Chatman was walking along the sidewalk in front of the bar, asking bar customers for money or cigarettes. Vincent noticed Chatman. Believing he was panhandling, Vincent went outside to tell Chatman to stop. Vincent was holding a vapor cigarette in his hand.

---

[1] Ind. Code § 35-42-2-1(b)(1), (f)(2) (2014).

[5]     Chatman was standing on the sidewalk, leaning against the exterior wall. When Vincent began speaking to Chatman, Chatman approached him. The conversation took place in front of the bar entrance. Vincent asked Chatman what he was doing. Chatman responded, "[O]h, just trying to find the holiday spirit." Tr. p. 19. Vincent told Chatman to leave the premises. Chatman began to walk away. Vincent walked back to the bar entrance, but paused outside, on the front step, to determine if Chatman actually was leaving the premises. Vincent observed Chatman ask another bar customer for money or cigarettes. Vincent, still standing just outside of the bar entrance, on the front step, again asked Chatman to leave.

[6]     Chatman approached Vincent. To create space between them, Vincent raised both hands, touched Chatman's chest lightly, and gently pushed Chatman. Chatman said, "[D]on't touch me." *Id*. at 23. Vincent placed the hand holding the vapor cigarette on his hip. Chatman asked, "[A]re you going to shoot me?" *Id*. at 24. Vincent replied, "I don't have to." *Id*. Chatman grinned. Vincent backed away from Chatman. Chatman removed a knife from his pocket, lunged at Vincent, and stabbed him one time in the lower left abdomen. After being stabbed, Vincent ran inside of the bar and yelled, "[K]nife!" *Id*. at 25.

[7]     James West, a customer, was approaching the bar at the time Chatman stabbed Vincent. James went inside the bar, encountered Vincent, then exited the bar with a male employee. Vincent's father, Ray, followed. The men confronted Chatman, who, at the time, was standing in the street outside of the bar. Ray was carrying the baseball bat he kept behind the bar counter.

[8] Chatman held the group at bay with his knife. Ray dropped the baseball bat and drew his handgun because he thought Chatman was moving toward him. Chatman lowered the knife and began to move away from the group. Ray, not realizing his son had been stabbed, holstered his handgun and started to pick up the baseball bat. At that point, the other men told Ray his son had been stabbed. Chatman turned and ran. Sometime during the altercation, the police were called.

[9] Ray and the other men chased Chatman. They soon encountered the police, and told the officers the direction in which Chatman ran. The police apprehended Chatman, arrested and searched him, and found a knife in his front pants pocket. The knife had a red substance on it that appeared to be blood.

[10] Vincent was taken to the hospital. His wound was treated, and he received four staples.

[11] Chatman was charged with battery by means of a deadly weapon, a Level 5 felony. He waived his right to a jury trial and was tried to the bench. Chatman did not testify. At trial, he did not deny that he committed the act that resulted in the battery charge. He did, however, raise the issue of self-defense. The trial court found Chatman guilty as charged. Chatman appeals.

## Discussion and Decision

[12] Chatman argues that his conviction should be reversed because the State failed to disprove his claim of self-defense beyond a reasonable doubt. According to

Chatman, the evidence at trial established he acted in self-defense, specifically, he was in a public place where he had a right to be, and was never on the bar's property; he was not at fault and only acted to defend himself after first being verbally harassed and physically pushed by Vincent; and he had a reasonable fear of great bodily harm because Vincent reached for his waistband.

[13] The State argues that Chatman's claim of self-defense fails because Vincent did nothing to warrant being stabbed, other than to exchange words with Chatman; Chatman clearly was the aggressor; and the evidence did not establish that Chatman was in fear of great bodily harm. According to the State, Chatman "provoked, instigated, and willingly participated in the violence." Appellee's Br. p. 10.

[14] Based upon the facts most favorable to the conviction, we find that the State presented sufficient evidence from which a reasonable trier of fact could have found that Chatman did not act in self-defense.

[15] The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State,* 770 N.E.2d 799, 801 (Ind. 2002). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.* If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable

person could say that self-defense was negated by the State beyond a reasonable doubt. *Id.* at 800-01.

[16] A valid claim of self-defense is a legal justification for an otherwise criminal act. *Henson v. State,* 786 N.E.2d 274, 277 (Ind. 2003). A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. Ind. Code § 35-41-3-2 (2013). In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson,* 770 N.E.2d at 800. An initial aggressor or a mutual combatant, whether or not the initial aggressor, must withdraw from the encounter and communicate the intent to do so to the other person, before he may claim self-defense. *Id*. at 801. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* at 800. The State can rebut the defendant's claim of self-defense by relying on the evidence of its case-in-chief. *Carroll v. State,* 744 N.E.2d 432, 434 (Ind. 2001).

[17] The bar's security camera surveillance system captured footage of the encounter between Vincent and Chatman. The footage was admitted into evidence as State's Ex. 4. Although Chatman was in a place where he had a right to be, the evidence establishes that Chatman was the initial aggressor and did not retreat, and that Chatman was not in fear of great bodily harm when he stabbed Vincent. *See* State's Ex. 4.

After Vincent twice told Chatman to stop panhandling, Chatman invaded Vincent's personal space such that Vincent had to raise his hands, lightly touch Chatman's chest, and gently push Chatman to create space between them. Vincent did not reach for his waistband, but instead placed the hand that held the vapor cigarette on his hip. Vincent backed away from Chatman, but Chatman drew his knife, lunged at Vincent, and stabbed him. The momentum from the lunge and the stabbing caused Chatman to step up on the front step where Vincent stood. As Vincent ran into the bar for help, Chatman advanced toward Vincent before turning to walk away.

Chatman's suggestion that these facts do not demonstrate he was the initial aggressor, or that the facts demonstrate he was in fear of great bodily harm is simply an invitation to reweigh the evidence, which we will not do. *Wilson*, 770 N.E.2d at 801. Ample evidence was provided to disprove Chatman's claim of self-defense beyond a reasonable doubt.

## Conclusion

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

Robb, J., and Altice, J., concur.